### REAUME *v.* NEWCOMB.

MASTER AND SERVANT — SCOPE OF AUTHORITY — LIABILITY FOR NEGLIGENCE.

    Defendants, dry-goods merchants, employed boys to drive their delivery wagons; the horses and wagons being in the care of the owner of a boarding stable. The employment of the boys lasted only from the time they received their horses and wagons at the stable until they delivered them back again into the possession of the stable keeper. One of the boys, after he had made his delivery, rode one of the horses, at the instance of the stable keeper, for the purpose of exercising him, and, while so riding the horse, collided with plaintiff on his bicycle. *Held,* that, as the boy was not in the employ of defendants at the time of the accident, and as what he did was, in any event, entirely outside the scope of his authority, defendants were not liable.

Error to Wayne; Carpenter, J. Submitted April 13, 1900. Decided May 15, 1900.

Case by Frank C. Reaume against Cyrenius A. Newcomb and others, copartners as Newcomb, Endicott & Co., for personal injuries. From a judgment for plaintiff, defendants bring error. Reversed.

The defendants are dry-goods merchants, forming a copartnership under the firm name of Newcomb, Endicott & Co. They employ in their business eight delivery wagons, each drawn by a single horse. The drivers are boys, each boy having his own wagon and particular horse. The horses were stabled by one Charles Pierce, who kept a public boarding and sale stable, situated upon

the alley between Sproat and Bagg streets, and on the, west side of the street.  Pierce had stabled these horses for about five years.  By the contract, he had the entire charge and control of the horses,—stabled and took care of them for $18 per month for each horse.  Any serious illness Pierce would report to defendants, but one Cooper, who was superintendent of deliveries, was expected to look after ordinary ailments.  Cooper's business was to direct the boys at the barn about starting; see that they leave on time and get down in time to make the deliveries; to arrange about the horses going to the blacksmith shop,—keep track of that; and to attend to all the details of the wagons, in connection with the horses, that are not of sufficient importance to report to the ôffice.  He has general supervision of the boys.  The boys had nothing to do with the care of the horses, except when they were driving them.  There were three deliveries a day,—one at 9 o'clock, one at 11, and another at 3.  The boys went to the stable for their wagons so as to have them at the store at 9 o'clock.  The horses were harnessed and ready for use.  On their return at noon or at night the boys drove into the alley in front of the stable, cried out, "Horse," and left.  From that time the horses were entirely in the control of Pierce until they were harnessed and delivered to the boÿs again in the afternoon or morning.  The boys usually had the horses back to the stable from a quarter to half past 12.  They were employed for the sole purpose of driving these wagons through the streets in delivering goods.  After they returned the horses to the stable, and until they returned for them for the next delivery, their time was their own, and they were accustomed then to do work for other parties.  Sometimes they went home, and sometimes they had their dinner at the barn.

Among these boys was one named Westcott, who was accustomed to take care of another man's horse and buggy when not employed by defendants as above stated. Among the horses owned by the defendants was one

named "Chub," about 20 years old. A day or two previous to the accident, Pierce, thinking the horse was not well, gave him a "ball," which means a physic. On May 3d, at noon, after Westcott had delivered his horse and wagon at the stable, Pierce thought it best that the horse Chub should be given some exercise. He asked one of the boys, named Dee, to ride him. Dee declined, saying that he could not ride. Westcott offered to ride him, to which Pierce replied, "All right." Westcott mounted the horse, rode him down the alley, finally getting him into a canter, and rode out of the alley on Bagg street, and passed a building known as the "Alhambra Flats." The alley is 15 feet 3 inches wide. From the Alhambra Flats to the curb line of Bagg street is 17 feet 10½ inches. The horse shied at a puddle of water alongside the Alhambra Flats, and started ahead. At the same time plaintiff was riding west on a bicycle, on the north side of Bagg street, and about 5 feet from the curb. The horse and bicycle collided, resulting in serious injury to the plaintiff. He brought suit against the defendants on the ground that the boy, Westcott, was negligent in riding the horse, that he was an employé of defendants, and that for his negligence they were liable. He recovered a verdict and judgment.

*Bowen, Douglas & Whiting* (*Harrison Geer*, of counsel), for appellants.

*C. H. Freeman* (*C. D. Joslyn*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). The court should have directed a verdict for the defendants. Westcott was not in the employ of the defendants at the time of the accident, and what he did was entirely outside the scope of his authority. His employment lasted only from the time that he received his horse and wagon at the stable until he had delivered him back again at the stable into the possession, control, and care of Mr. Pierce, the

stable keeper. The horse which was ridden was not the one he drove. Pierce alone was responsible for the boy's act in riding the horse. Defendants did not authorize or permit him to employ the drivers for any such purpose. Hundreds and thousands of men are employed to work a portion of the day for one employer, and are at liberty to work the balance of the time for others or for themselves. If this boy had been permitted by Pierce to take the horse and wagon on business for himself or for Pierce outside of the delivery hours, defendants would not be liable for any negligence of the boy, because it would be without the scope of the authority of either Pierce or Westcott. That the act to be done by the boy might possibly result, or was intended to result, in benefit to defendants, is not the test of authority. The act must be within the scope of his employment, in order to render his employer liable. The rule as stated by text writers is as follows:

"The act causing the injury must have been one within the scope of the authority which the servant had from the master, or which the master gave the servant reasonable cause to believe that he had, or which servants employed in the same capacity usually have, or which third persons have a right to infer from the nature and circumstances of the employment." 1 Shear. & R. Neg. (4th Ed.) § 148.

Complaint is made that counsel for the plaintiff, in their argument to the jury, used language not justified by the record, and prejudicial to the rights of the defendants. If the case were not reversed upon the principal question in the case, we should be compelled to consider these remarks. We think they were unjustifiable. But, inasmuch as they are not liable to occur upon a new trial, should one be had, we refrain from their discussion.

Judgment reversed, and new trial ordered.

The other Justices concurred.