### LONG v. RICHMOND.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

INJURIES TO THIRD PARTY—MASTER'S LIABILITY.

Where defendant's servant was instructed to take defendant's two ponies to a certain place, and afterwards to return them, and was instructed to ride the chestnut and lead the gray, and not to ride the gray or permit any person to ride him, but the servant permitted a third person to ride the gray, and the pony became unmanageable and ran into plaintiff's horse and wagon, injuring them, defendant was not liable.

Spring, J., dissenting.

Appeal from trial term, Erie county.

Action by Lafayette L. Long against John Richmond. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

The action was commenced on the 25th day of April, 1901, to recover damages sustained by the plaintiff, alleged to have been caused through the negligence of a servant of the defendant while engaged in the performance of the duties of his employment. On the 1st day of October, 1900, the day on which the accident in question occurred, and for some time prior thereto, the defendant, who resided on Delaware avenue, in the city of Buffalo, N. Y., about two miles from Park Meadow, adjoining the Park Roadways, where polo games were played, was the owner of two polo ponies, —one a chestnut, and the other a gray,—which he used as occasion required in playing the game of polo. Several days prior to the accident, a Mr. Cary, who was a near neighbor of the defendant, had made an arrangement with the defendant by which he (Cary) might have the ponies to play in the game of polo when not required by the defendant. Cary was instructed that when he desired the ponies he should inform defendant's coachman, who would saddle and make the ponies ready, and take them to the polo grounds for his (Cary's) use. The defendant informed his head coachman of the arrangement, and the head coachman instructed his assistant, a Mr. Smith, to take the ponies to the polo grounds whenever Mr. Cary should instruct him to do so. On the day of the accident Mr. Cary went to defendant's stable and told the assistant coachman to take the ponies to the polo grounds. When he gave such instructions one Eckert, who was not and never had been in the employ of the defendant, was with the assistant. Previous to this time the assistant coachman had been instructed by defendant and also by the head coachman to ride the chestnut and lead the gray, and he had also been instructed not to let anybody ride the gray pony on the way to or from the grounds. Notwithstanding and in violation of such instructions, and without the knowledge of the defendant,—he being absent from the city at the time,—the assistant coachman permitted Eckert to accompany him to the polo grounds; the assistant riding the chestnut pony, and Eckert riding the gray. When they reached the grounds the ponies were turned over to Mr. Cary, who rode them in the game, and after the game was finished they were again taken charge of by the defendant's assistant coachman and Eckert. They mounted the ponies as before, the assistant coachman starting with the chestnut on the direct road for home. Eckert rode about the polo grounds with the gray pony, and in such manner that it became frightened, ran at a high rate of speed into the public street, came in collision with the plaintiff's horse and wagon, and the accident resulted which caused the damages for which recovery is sought. Without detailing the circumstances relating to the management of the gray pony by Eckert, for the purposes of this appeal it will be assumed, but without deciding, that Eckert managed the gray pony in a careless and negligent manner, and that the accident was due to such negligence. It may also be assumed, but without deciding the question which is raised by appellant's counsel, that Eckert, under the circumstances, was not the servant of Cary. We then come to the only remaining question, whether or not, under the circumstances, Eckert was the servant of the defendant, and sustained such relation to him as to make the defendant liable for his negligence.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Frank Brundage, for appellant.
H. B. Butterfield, for respondent.

McLENNAN, J. The relation of master and servant only exists where the person sought to be charged, as master, for the act of a servant, had the right of control over him at the time the injury

sued for happened, or expressly or tacitly assented to the rendition of the particular services by him. In the case at bar the defendant had not employed Eckert, did not know that he was in any manner assuming to act for him, and he had not expressly or tacitly assented to the rendition of any services by him in respect to the ponies. Not only so, but, according to the undisputed evidence, what Eckert did was in violation of the express instructions given by the defendant to his coachman, which were communicated to Eckert. It would seem to be elementary, as a general proposition, that the selection of a servant is essential to responsibility for his acts by a master. Wood, in his work on Master and Servant (section 304), lays down the rule as follows:

"In order to render a person liable for the act of another, the relation of master and servant must exist. That is, at the time when the injury happened the person through whose instrumentality it was inflicted must have been engaged in doing an act for the person sought to be charged with liability. He must have been engaged in his business with his assent, express or implied, and must not at the time have been acting for himself, or as the servant of some other person. It is not necessary that any actual employment should exist, or that any compensation should be paid or expected for the service. It is enough if he was in fact rendering the service with the assent of the person sought to be charged, either express or implied."

In Wood v. Cobb, 13 Allen, 58, which was an action to recover damages for a personal injury received in consequence of the neglect of defendants' servant in driving against the plaintiff, it appeared that the defendants, who were dealers in fish, employed a truckman, for a certain sum, to deliver fish each Friday to their customers. The truckman, being sick, told his servant to get help if necessary; and accordingly the servant of the truckman procured the defendants' servant, with their assent, to drive one team and deliver the fish, and while so doing he drove against the plaintiff, and thereby caused the injury complained of. It was held that the defendants were not liable, because the driver of the truck was not at the time of the accident in the employment of the defendants, and was in no way subject to their command or control. In Goodman v. Kennell, 3 Car. & P. 168, the plaintiff sustained an injury through the negligence of defendant's servant while riding his master's horse in doing an errand for him. It appeared that the servant had been instructed to do the errand on foot, and that he took the horse without any authority from or knowledge of the master, and it was held that the plaintiff could not recover. Park, J., in writing the opinion for the court, said, if a recovery could be had in such case, "every master might be ruined by acts done by his servant without his knowledge or authority." In Weldon v. Railroad Co., 5 Bosw. 576, the plaintiff was injured by reason of the escape of the defendant's horses from the control of the servant in charge of them, because they were struck by another servant of the defendant, who had no authority or control over them. It was held no recovery could be had. We think the rule stated by Wood, in his work on Master and Servant (section 281), is correct:

"In order to be held chargeable for the acts of another, the person sought to be charged must at least have the right to direct such person's conduct,

and to prescribe the mode and manner of doing the work; and the person for whose acts he is sought to be charged must, at the time when the act complained of was done, not only have been acting for him, but also must have been authorized by him, either expressly or impliedly, to do the act."

In the case at bar, Eckert, at the time of the accident, had not been authorized by the defendant, either expressly or impliedly, to act for him. He had never acted for him before. The defendant had no knowledge that Eckert was then assuming to act for him, but, on the contrary, as we have seen, what he did was in violation of the defendant's express commands. If, under the circumstances, the defendant is liable for the acts of Eckert, he would have been equally liable for the act of any other person or any number of persons whom his assistant coachman might have permitted to take charge of the ponies. We can conceive of no rule of law or of equity which will permit a servant, in violation of his master's instructions, and without his knowledge or consent, to allow other persons to do his work which he is employed to do, without any necessity therefor, and thus make the master liable for the negligent acts of such other persons. It is well settled that if a person leaves his horse in charge of a servant, and the servant uses the horse for his own private purposes without the knowledge of the master, the master is not liable for the negligent acts of the servant while so engaged. In other words, the master is protected by the rule adverted to against the negligent management of his horse by the servant while not engaged in the master's business. It would seem equally reasonable that a master should be protected against the acts of persons not employed by him, but who are permitted by his servant to drive such horse in violation of the master's instructions, although for the master's purposes. The case of Althorf v. Wolfe, 22 N. Y. 355, is not an authority for respondent's contention. In that case the defendant directed his servant to remove snow and ice from the roof of his house, and the servant permitted a stranger to accompany him to the roof and aid in removing the snow. By the negligence of the person so permitted to go upon the roof, a traveler upon the street was injured, and it was held that a recovery could be had for the injuries sustained. But in that case stress is laid upon the fact that "the defendant had given him [his servant] general directions to throw the snow from the roof of his house, enjoining no caution and suggesting no mode of doing it to prevent injury, nor placing the servant under any restriction against procuring aid in the work." Stress is also laid upon the fact that the servant introduced the person whom he had procured to assist him into the defendant's house for that purpose, without objection from those having charge and control of it. The court said:

"Had Cashan [the person employed to assist the servant] gone upon the roof of defendant's house without the knowledge or authority of the defendant or his family, and injured a passer-by by throwing snow and ice upon him, nobody would pretend that the defendant would be liable; but the case assumes an entirely different aspect when it is conceded that he was there at the solicitation of Fagan [the servant], assisting him in a work that the defendant had directed to be done, and with the knowledge and assent of the defendant's family."

Again, the court said:

"If they [the defendant's family] knew and assented to his [Cashan's] being there, it was equivalent to knowledge and assent on the part of the defendant. If not brought in, he was allowed to be on the premises by the owner; and the latter· is charged with knowledge that he was engaged in' the particular service, to which he interposed no objection or dissent. I suppose that if the wife of the defendant, in the absence of the latter, had ordered Cashan to assist Fagan in the work, the defendant would have been responsible. This case shows that he was not there in hostility to the wishes and intention of the defendant's household, but in accordance with them; and, under the circumstances, it should hardly be allowed the defendant to say: 'It is true, I ordered the work to be done; placed no· restrictions on my servant against engaging assistance; my household knew that Cashan was aiding him, and tacitly assented to it; but as I did not know, or expressly authorize him to enter my house and engage in my service, I ought not to be liable.' "

In the case at bar the defendant did place restrictions upon his servant against engaging assistance. The instructions were to ride the chestnut pony and lead the gray to and from the grounds. Neither the defendant nor any member of his household knew that Eckert was to ride the gray pony, or have anything to do with taking him to or from the polo grounds. If it had been necessary for the defendant's assistant coachman, in order to manage the ponies, to employ assistance, the person so employed would undoubtedly have become the servant of the defendant, and he would unquestionably have been liable for his negligence; but there is no evidence tending to show that assistance was necessary, or that the assistant coachman could not himself, without difficulty, have taken the ponies to and from the polo grounds. The case of Marks v. Railroad Co., 146 N. Y. 181, 40 N. E. 782, is authority for the proposition that a person assisting a servant under the circumstances disclosed by the evidence in this case cannot recover against the master for injuries sustained while so employed. While that was an action brought by the person assuming to assist the defendant's servant, and therefore in that respect differs from the case at bar, it will be observed that the decision is based upon the proposition that the plaintiff was not a servant of the defendant, and for that reason it was held that the defendant was not liable to him for the injuries which he sustained. The decision, as applied to the facts in this case, is equally authority for the proposition that Eckert was not the servant of the defendant, and if so it must follow, as matter of course, that the defendant was not liable even to third parties for his acts, because, as we have seen, the first requisite in such a case is that the relation of master and servant should exist.

The conclusion is reached that Eckert at the time in question was not the servant of the defendant, and that the defendant was in no way responsible for his acts under the circumstances disclosed by the evidence in this case. It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment reversed, upon questions of law, and new trial ordered, with costs to appellant to abide event. All concurred, except SPRING, J., who dissented in an opinion.

SPRING, J. (dissenting).   Smith was the servant of the defendant.   He was directed by his employer to take these ponies to the polo grounds, and, after they had been used by Cary, to return them to the premises of the defendant.   Eckert was assisting him; that is, he was riding one of the ponies on the way back to the barn when the injuries were inflicted, and through the negligence of Eckert.   The accident occurred, therefore, while these men were engaged in the prosecution of the business of the defendant, and that is the test by which his liability is to be measured.   Cosgrove v. Ogden, 49 N. Y. 255, 10 Am. Rep. 361; Quinn v. Power, 87 N. Y. 535, 41 Am. Rep. 392.   In the first case cited the court say at page 257, 49 N. Y., and page 363, 10 Am. Rep.:

"The test of the master's responsibility for the act of his servant is not whether such act was done according to the instructions of the master to the servant, but whether it is done in the prosecution of the business that the servant was employed by the master to do.   If the owner of a building employs a servant to remove the roof from his house, and directs him to throw the materials upon his lot, where no one would be endangered, and the servant, disregarding this direction, should carelessly throw them into the street, causing an injury to a passenger, the master would be responsible therefor, although done in violation of his instructions, because it was done in the business of the master."

It is not important that Eckert was not employed by the defendant, or that he was riding the pony contrary to the instructions given by the defendant.   The point is, Smith was in the prosecution of the defendant's business, and the latter cannot be relieved because his servant disregarded his instructions and permitted Eckert to ride one of the horses.   Hill v. Sheehan (Super. Buff.) 20 N. Y. Supp. 529.   In that case the defendant was a livery stable keeper, and it was the duty of one of his servants to drive a horse to an office in the city of Buffalo, and the servant engaged one Krueger to do this work, against the positive instructions of the defendant.   Krueger, while on the way to the office, drove the horse in such a careless manner that he ran into and injured the plaintiff.   A verdict was directed in favor of the defendant, and the general term of the superior court of the city of Buffalo reversed the judgment entered upon this verdict.   In commenting upon the rule here under consideration, the court say at page 530, 20 N. Y. Supp.:

"The direction by the court proceeded upon the theory that the relation of master and servant was not established, and consequently defendant was not liable for the act of Krueger.   Examination leads me to the conclusion that this ruling was wrong.   We see that the servant of the defendant was charged with the duty of delivering the horse.   That he violated that duty in intrusting it to a stranger for delivery is equally true, but such violation of duty does not lead to a discharge of the master from liability."

And again:

"It is insisted that Krueger was in no sense defendant's servant, and consequently he cannot be made liable for his acts.   This overlooks the fact that, by the act of the servant who was in charge, an instrument (i. e., Krueger) was used for the prosecution of the master's business, and that such instrument inflicted the injury.   It is not essential, under such circumstances, that the relation of master and servant should exist, in order to fasten responsibility.   It is sufficient when it appears that the master's business is being prosecuted by the instrument used."

The logic of the prevailing opinion is that, if these two horses had run away and inflicted the injuries complained of, the defendant would be liable for those committed by his servant Smith, but not for those which happened to be caused by the horse Eckert was riding. As both were engaged in the defendant's business, the distinction does not seem to be tenable. The proof shows that Eckert started from the barn with Smith, riding one of the ponies to the polo grounds with the latter's assent; that he remained there while Cary was using the ponies, and, when they were not engaged, assisted in blanketing them and walking them about, and continued his assistance by riding one of them toward the barn. He was therefore in the prosecution of the defendant's business during all the time that the ponies were under the control of Smith on this occasion. The servant may have deviated from his employer's instructions, but that misconduct does not relieve the master, as at the time of the accident the men were returning to the barn with the ponies, which was the business Smith was directed to attend to. Williams v. Koehler, 41 App. Div. 426, 58 N. Y. Supp. 863; Riegler v. Association, 40 App. Div. 324, 57 N. Y. Supp. 989, affirmed in 167 N. Y. 542, 60 N. E. 1119. When the defendant vested Smith with authority to manage the business in taking charge of these ponies, he became responsible for the conduct of his servant; and if that servant employed or permitted another man to assist him, both came within the dominion of the defendant to such an extent that he is responsible to third persons for the acts of both of them, as long as they kept strictly within the business which was committed to the servant.

The judgment and order should be affirmed, with costs.