# HENDLER CREAMERY COMPANY *v.* HERBERT MILLER.

*Negligence of Servant—Acting Through Another—Liability of Master—Personal Injury—Evidence—Failure to Submit to Operation.*

Where the chauffeur of defendant's truck allowed a mere helper on the truck, the chauffeur being present, to move the truck from its position against the sidewalk, defendant was liable for injuries caused by the helper's negligence in so doing, this being in effect the chauffeur's negligence.    pp. 270, 271

The proprietor of a store, injured by the protruding tail gate of defendant's truck, as it suddenly backed up against the sidewalk, after having deposited thereon a heavy cabinet to be placed in the store, and then "pulled away" to the other side of the street, was not negligent because he was at the time passing between the curb and the cabinet, this space being sufficient for the passage of pedestrians.    p. 271

There can be no recovery for suffering and disability, which could have been prevented by a simple operation to which an ordinarily reasonable man would have submitted, but to which plaintiff refused to submit.    p. 272

In an action for personal injuries, an instruction that, in estimating damages, the jury should compare plaintiff's health and condition before and after the injury, and consider how far the injury was calculated to disable him from engaging in employments for which he would otherwise be qualified, and also his physical and mental suffering, if any, *held* not defective as excluding from the jury's consideration the question, raised by the evidence, of how far plaintiff's condition and suffering were due to his failure to submit to an operation such as an ordinarily reasonable man would have submitted to under the circumstances.    pp. 271-273

Witnesses well acquainted with plaintiff, who saw him frequently, were qualified to testify as to his appearance and condition before and after the accident.                    p. 273

*Decided June 9th, 1927.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by Herbert J. Miller against the Hendler Creamery Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles F. Harley* and *Michael James Manley,* for the appellant.

*Leonard Weinberg,* with whom was *Clay Jewell* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

The plaintiff, appellee here, was injured by an electric truck of the defendant. At the time of the injury the truck was being operated in the business of the defendant. The principal question is, Was there any evidence legally sufficient to show that a servant of defendant, while acting within the scope of his employment, was guilty of negligence to which the injury was attributable? This question is raised by the twenty-first bill of exception, which embraces the refusal of defendant's first and second prayers. The facts briefly stated are as follows:

The defendant agreed to install in plaintiff's store an ice cream cabinet, on the promise that plaintiff would continue to purchase ice cream from it for a certain period of time. On the day of the accident, plaintiff was in the rear of his store when the truck arrived, loaded with five of the cabinets, one of which was intended for plaintiff. On the

truck were four employees of defendant, Perry, the chauffeur, Morris Levin, Henry Strauss, and George Pierce, helpers.

One of the men, supposed by plaintiff to be the chauffeur, entered the store with a delivery ticket, and asked plaintiff to show him where the cabinet was to be placed and through which door it was to be brought in. Plaintiff went out to the pavement, and . gave him the necessary instructions. While the unloading proceeded plaintiff remained on the pavement. He testified that there were four men, including the driver, on the truck; that they took the cabinet out and lowered the front end in the door, and that it was projecting about a foot inside the door, and that one man on the inside told some man on the outside to drive the truck away, so they could lower the other end on the sidewalk; that there were two men inside the store, one of whom he thought was the driver; that one of them said twice, "Pull the truck ahead"; that the witness was standing on the pavement on one side of the cabinet; that the truck pulled over to the other side of the street; that there were two men at the back of the cabinet and, in lowering it, it got away from them and fell to the sidewalk; that he then walked around to look at the cabinet and was passing to the other side looking at it, and before he knew anything, the truck came back and pinned him on top of the cabinet; that the tail gate of the truck was on a little incline and came up over his back and pushed him down on the cabinet and mashed him there, and mashed the cabinet (which was made of metal of some kind) in about a half an inch with his stomach in there; that his stomach was against the edge of the cabinet, taking the skin off from his hips half way to his shoulders; that after a little time, the truck was pulled away and some one lifted him off the cabinet, and the next thing he knew the truck hit him again and knocked him up against the building, bursting his pocket, in which he had his money, scattering it over the street; that the second time he was hit he was being carried by two or three men, and one of

them was knocked down; that the man that directed the truck to be pulled away, he supposed was the driver, because he had charge of the truck.

Strauss testified that Perry, the driver, told him to pull the truck up, so he could get the back end down on the pavement; that witness pulled the truck up until he came to the cross street, and "I couldn't run over the top of the pavement, there was a lamp post there, so I went to shut the control off and I went back into reverse—there is a little pin on the control and it slipped back into reverse—that is what you operate it by, to go forward or reverse"; that he is not a mechanic and couldn't tell whether it was broke or not; that he did not examine it; that the truck came back to the pavement when it slipped in reverse, and he heard a lot of people screaming; that then the driver jumped in and shoved witness over and grabbed the control handle and had full control of the truck and pulled forward and tried to shut the power off, and "it came back in reverse," and "I guess it hit Mr. Miller again"; that the regular chauffeur, Perry, was driving at that time; that witness was not a chauffeur, he was a helper in the cabinet department; that he had an instruction license; that the chauffeur was in charge of the crew of men down there that day; that he took his orders from him; that Mr. Duke was foreman of the cabinet department, and witness was a laborer in that department; that one day, when a chauffeur named Benjamin Smith had a sprained wrist, witness was ordered by Duke to drive the truck that day, and he instructed Smith to ride beside him on the truck; that witness had taken two examinations but failed both times, the last time just before the accident; that Smith's truck was a gas truck.

Duke testified on behalf of defendant that he never gave Strauss authority at any time to run a machine; that, on the occasion spoken of by Strauss, he sent him out to crank the car and help Smith out; that he told Smith in the presence of Strauss three or four times that Smith was not to allow Strauss to drive the car, knowing that he had failed to pass an examination, and that Smith was not the instructor named

on the instruction card, but Smith's brother; that he told Strauss he could not drive any car whatever, "not to touch any of the wheels"; that Perry was the chauffeur of the truck which injured plaintiff, and Strauss and the other two men were sent along to help take the cabinets off.

Strauss was plaintiff's witness, and he was not offered in rebuttal to contradict Duke's testimony that he had positively forbidden him to drive a car. And Strauss himself testified that he had never driven an electric car, and he did not claim that he was authorized to drive any car except on one day, and then with the chauffeur beside him.

The presumption that one driving a car at the time of an accident is the servant of the owner, and acting within the scope of his authority, is overcome by the uncontradicted testimony of absence of authority on that occasion. *Vonderhost v. Amhrine,* 98 Md. 406; *Dearholt Co. v. Merritt,* 133 Md. 323; *Symington v. Sipes,* 121 Md. 313; *State, use of Debilius, v. Benson,* 129 Md. 693; *Pollock v. Watts,* 142 Md. 403; *Salowitch v. Kres,* 147 Md. 23; *Butt v. Smith,* 148 Md. 340.

This principle is recognized by appellee, and in argument he does not rely upon the presumption referred to, but insists that on the evidence in the case, and unavoidable inferences therefrom, "Strauss, the helper, was, not only in law but in fact, expected, intended and authorized, at least in the exigency which existed, to do exactly what he did do"; and bases that argument on (a) the testimony of Strauss that the chauffeur, Perry, who directed him to move the truck, was his foreman and was in charge of the crew; (b) the testimony of Strauss that he had been ordered by Duke, the superintendent, on a previous occasion, to drive a truck of appellant for an entire day, when a chauffeur, named Smith, had a sprained wrist (which is denied by both Duke and Smith); (c) the testimony of Duke, the superintendent, that there was no foreman in charge of the crew, and none was needed, as they had been working together long enough to know what to do; (d) inferences drawn by appellee that the duties of the men were interchangeable, and that they each were in

fact expected and authorized to do whatever may have been necessary in the transportation and delivery of the cabinets; (e) the inference drawn by appellee that the chauffeur Perry had at least implied authority to secure assistance from the helpers in moving the truck in the emergency when he was in the store with his egress blocked (as appellee alleges) by the cabinet, and the necessity arose to move the truck in order to lower the cabinet and relieve the blocking of traffic.

In the opinion of the writer of this opinion the inferences drawn by appellee are not legitimate. Even if it be true that on one occasion, not fixed in point of time, Strauss was directed to drive a gasoline truck with the regular chauffeur sitting beside him, it cannot be inferred that he was authorized on the occasion of the accident to drive an electric truck without the chauffeur being on the truck, especially in face of the uncontradicted testimony that he was forbidden to drive any car after the superintendent learned he had twice failed to pass the necessary examination, and when he could not drive a car without violating the law. And it was not within the implied authority of the chauffeur to call upon him to do so. Nor can it be inferred that the duties of a licensed chauffeur were interchangeable with those of mere helpers in the matter of lifting cabinets. The case chiefly relied on by appellee in this connection is *Adams Express Company v. Lansburgh & Brother,* 49 Dist. Col. App. 144, 262 Fed. 232, wherein the authorities cited do not strongly support the decision. The overwhelming weight of authority is against it.

On the question as to whether Strauss was acting within the scope of his express or implied authority in attempting to move the truck, the following authorities are in point: 1 *Shearman and Redfield on Negligence* (4th Ed.), sec. 148, where it is said:

"The act causing the injury must have been within the scope of the authority which the servant had from his master, or which the master gave the servant reasonable cause to believe that he had, or which servants employed in the same capacity usually have, or which third persons have a right to

infer from the nature and circumstances of the employment";
39 *C. J.,* page 1280, sec. 1469; *Harlan on Domestic Relations*
(1909), 134; *Labatt on Master and Servant,* vol. 6, secs.
2286 and 2292; *Beard v. London General Omnibus Co.,*
Court of Appeals (1900), 2 Q. B. 530; *O'Loughlin v.
Mackey,* 182 App. Div. 637, 169 N. Y. Supp. 835; *Boettcher
v. Best & Co.,* 203 App. Div. 574, 197 N. Y. Supp. 1,
affirmed in 237 N. Y. 506; *Seaboyer v. Director General of
Railroads,* 244 Mass. 122; *Brown v. Jarvis Engineering Co.,*
166 Mass. 75, 32 L. R. A. 605; *Reaume v. Newcomb,* 124
Mich. 137; *Engelhart v. Farrant,* 1 Q. B. (C. A.) 240;
*Lima R. Co. v. Little,* 67 Ohio St. 91; *Long v. Richmond,*
68 App. Div. 466, 73 N. Y. Supp. 912, affirmed in 175 N.
Y. 495; *Brenner v. Ford,* 116 La. 550; *Wilson v. Pennsyl-
vania R. Co.,* 63 N. J. Law, 385; *Daniel v. Atlantic Coast
Line R. Co.,* 136 N. C. 517, 67 L. R. A. 455; *Hall v. Poole,*
94 Md. 176; *Goldsmith v. Chesebrough,* 138 Md. 1, and
cases there cited.

But the majority of the Court deem it unnecessary to de-
cide that question. We all think the first and second prayers
of defendant were properly refused on another ground. The
facts of this case bring it within the principle of the decision
in *Booth v. Mister,* 7 Carr. & Payne, 66. There a servant
of the master, driving a cart on his master's business, in-
trusted the reins to a friend riding with him, who drove
carelessly and caused an accident. The court said: "As the
defendant's servant was in the cart, I think that the reins
being held by another man makes no difference. It was the
same as if the servant held them himself." In *Geiss v.
Twin City Taxicab Co.,* 120 Minn. 368, the court cited *Booth
v. Mister, supra,* and used the following expression in ap-
proving the principle: "We approve the rule that when the
master intrusts the performance of an act to a servant, he is
liable for the negligence of one, who, though not a servant
of the master, in the presence of his servant and with his
consent negligently does the act which was intrusted to the
servant." In *Althorf v. Wolfe,* 22 N. Y. 355, one of the
judges put liability on the ground, not that the one called in

was defendant's servant, but that he was the instrument by which the servant did the wrong.  In *Bamberg v. International Ry. Co.,* 103 N. Y. Supp. 297, this is recognized as the real ground of the last mentioned decision, and the principle was applied where a servant employed as the driver of an ice cream delivery wagon permitted a boy to drive while the servant was in the back part of the wagon arranging the cans, when an accident happened from the negligent driving of the boy.

The accident in the present case is attributable to the negligence of the chauffeur, Perry, as well when he stood by and permitted Strauss to negligently perform a duty which belonged to Perry, as when the truck, with Perry at the wheel, came back a second time and again struck appellee.

We find no evidence of contributory negligence in this case and therefore defendant's third and sixth prayers were properly refused.  Plaintiff was on the sidewalk, where he had a right to be, beyond reach of the truck until it was driven across the street, when he started to walk around the cabinet which had fallen to the pavement when the truck moved off.  There was sufficient room between the cabinet and the curb for pedestrians to pass.  He had no reason to anticipate the negligence which caused the truck to again back up against the curb with protruding tail gate extending over the pavement.  He was just where any pedestrian who happened to be passing at that time might have been.  *United Rwys. v. Perkins,* 152 Md. 105.

Plaintiff's prayer was as follows: "The court instructs the jury that if they find their verdict for the plaintiff, then in estimating the damages they are to consider his health and condition before the injury complained of, as compared with his present condition, in consequence of such injury, and how far, if at all, it is calculated to disable him from engaging in employments for which, in the absence of such injury, he would have been qualified, and also the physical and mental suffering, if any they find, to which he was subjected by reason of such injury, and to allow him

such damages as in the opinion of the jury will be a fair and just compensation for the injuries (if any they find) he has sustained."

There was testimony in the case by his physician, Dr. William B. Dalton, that appellee refused to be operated on; that if he had been operated on at the time of the accident the probabilities are that he would have been well long before the trial; that there is nothing serious about a hernia operation; that witness saw appellee about a year before the trial, and he then had a hernia, and there was then nothing else the matter with him; that while all patients do not get well, the majority of them do, and the side operated on is probably stronger than the opposite side.

It has been definitely decided in this state that there can be no recovery for suffering and disability which could have been prevented by a simple operation, which an ordinarily reasonable man would have submitted to, but which plaintiff refused to submit to. *United Rwys. Co. v. Dean,* 117 Md. 686; *Schiller v. Balto. & O. R. Co.,* 137 Md. 246, and cases there cited. *McCulloh v. Restivo,* 152 Md. 60. See also a very reasonable discussion of the question in *White v. Chicago & N. W. Ry. Co.,* 145 Iowa, 408.

In the opinion of the majority of the Court, plaintiff's prayer as granted does not exclude from the consideration of the jury the question of how far plaintiff's present condition and the suffering he has endured since the accident were due to his failure to submit to such treatment as an ordinarily reasonable man would have submitted to under the circumstances. But that is not the view of the writer, considering the matter as a practical proposition. It is true the prayer is not far different in form from the ordinary damage prayer found in our reports, and ordinarily it may not be objectionable. But as so much stress was laid in the present case on plaintiff's suffering and disabilities even up to the time of the trial, the prayer was here misleading, and practically operated to concentrate the attention of the jury upon the then condition of plaintiff and all his suffer-

ing following the accident.  It is too much to require of
the average jury, unaccustomed to subtle reasoning, that it
exercise the fine discrimmation which would be necessary
to distinguish between the suffering and disability which
follow an accident in which they have their origin, and the
condition which is, strictly speaking, the consequence of such
accident.  The function of a prayer is to aid the jury in
reaching a just verdict in the case immediately under con-
sideration, and not primarily to formulate a legal principle
for the benefit of lawyers.

If the prayer was to serve as a guide to the jury, and not
to be a source of confusion, a proviso should have been added
such as would have pointed out to the jury its duty to con-
sider whether any part of the suffering and disability of the
plaintiff was due to his failure to submit to such treatment
as an ordinarily reasonable man would have submitted to,
and clearly informed the jury that plaintiff's recovery should
be limited to compensation for such part of his suffering and
disability as was not due to his own neglect, if the jury
should find such neglect.

There are in the record twenty exceptions to rulings on
testimony.  The first two apparently were abandoned—no
point was made of them in appellant's brief.  We find no
reversible error in these rulings.  Numbers three to twenty,
inclusive, relate to questions asked witnesses as to the ap-
pearance and condition of appellee before and after the
accident.  These witnesses were well acquainted with appel-
lee and saw him frequently.  Under the decisions in *Balti-
more and Liberty Turnpike Co. v. Cassell*, 66 Md. 419, and
*Fletcher v. Dixon*, 113 Md. 101, they were qualified to testify
as to the matters about which they were interrogated.

*Judgment affirmed, with costs to appellee.*