52 N.J. Super. 52 (1958)
144 A.2d 728
ALLEN M. MILLS AND JOSEPH M. HAMILTON, EXECUTORS OF THE ESTATE OF LAURA E.W. TYLER, DECEASED, PLAINTIFFS,
v.
THE CITY OF PHILADELPHIA ACTING THROUGH THE BOARD OF CITY TRUSTS, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 2, 1958.
*53 Mr. Edwin G. Scovel, attorney for plaintiffs.
Mr. David Furman, Attorney General, for the State of New Jersey.
Mr. Augustine A. Repetto, attorney for Hahnemann Hospital of Philadelphia, Pa.
Mr. Walter S. Jeffries, Jr., attorney for the City of Philadelphia acting through the Board of City Trusts.
Mr. Theodore E. Lapres, Jr., attorney for the Prisoners Family Welfare League of Philadelphia (or Pennsylvania).
LESTER A. DRENK, J.C.C. (temporarily assigned).
This is an action by the executors of the estate of Laura E.W. Tyler, deceased. The first count of the complaint raises the question of the legality of two certain trust funds created under the will of the decedent and seeks instructions in regard thereto. All other matters raised in the pleadings have been heretofore determined.

*54 I.
Two charitable trusts were created by the testatrix in her last will and testament in the following language:
"All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to `The City of Philadelphia, Pa., acting by the Board of Directors of City Trusts,' in Trust, as a separate and permanent fund, to hold, invest and re-invest the same, to collect the income and after paying all expenses, incident to the management of the trust, to use one half of the annual net income arising therefrom, to be known as `The Henry L. Wilkinson Fund' to provide food and clothing for White, American born, needy and dependent wives, and, of white, American born, needy and dependent children under fourteen years of age of felons committed to `The Eastern State Penitentiary,' now at 21st and Fairmount Avenue, Philadelphia, Pa., or wherever the same may be located, or, the institution that later takes its place; and, to use the other half of the annual net income arising therefrom, to be known as `The Mercy A. Wilkinson Fund' either for free hospitalization at Hahnemann Hospital, now located on Broad St. above Race Sts., in the City of Philadelphia, Pa. or the institution that takes its place, or treatments at home or in clinic by said Hahnemann Hospital or its successor of white, American born, needy children under fourteen years of age, such children not to be chronic cases, nor children of an intelligence quotient of less than seventy-five."
Plaintiffs seek construction of the above article because of the named trustee and because the beneficiaries of the first-mentioned trust are limited to "white, American Born, needy and dependent wives and of white, American born, needy and dependent children under 14 years of age of felons committed to the Eastern State Penitentiary, now at 21st and Fairmount Avenues, Philadelphia, Pa.," and the beneficiaries of the second mentioned trust are limited to "white, American born, needy children under 14 years of age, such children not to be chronic cases nor children of an intelligence quotient of less than seventy-five."
The doubt has arisen in the minds of the executors by reason of the decision of the United States Supreme Court in the case of Commonwealth of Pennsylvania v. Board of Directors of City of Philadelphia, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957). In this case, the Supreme Court *55 of Pennsylvania originally held that the will of Stephen Girard and the testator did not violate the 14th amendment of the United States Constitution, because of the exclusion of Negro orphans from Girard College, Girard Will Case, 386 Pa. 548, 127A 2d 287 (Pa. 1956). This decision was appealed to the United States Supreme Court, supra.
Before discussing the application of the Girard College case, it seems advisable to set forth briefly some of the facts concerning the decedent Laura E.W. Tyler. She was a retired school teacher. She had graduated from Bryn Mawr College; earned a degree of law at Temple University and a master's degree at Columbia University. Her will and codicils, except one, were prepared by herself. Those that she prepared were in her own handwriting and apparently she sought no legal advice other than her own in reference to the preparation of her will and codicils.
Decedent died July 13, 1956, a resident of the City of Ventnor, Atlantic County, New Jersey. The plaintiffs qualified as executors before the Surrogate of Atlantic County, November 28, 1956.
By reason of her education and interest in education, due to her employment, it is reasonable to assume that the decedent had some knowledge of the creation, administration and operation of Girard College. Why she was interested in the classes who are to benefit under the terms of the trust created in her will does not appear. It was also quite apparent that she had not forecast nor was information available to her as to the action of the United States Supreme Court in regard to the provisions of the trust created under the will of Stephen Girard.
A concise statement of facts as to the litigation in the Girard estate appears in the brief submitted on behalf of the City of Philadelphia acting by the Board of Directors of City Trusts. The following history is given on pages 5, 6, 7, 8, of said brief.
"The basis of any challenge of The City of Philadelphia as Trustee under Item IX of the testatrix's will, must be the decision of the Supreme Court of the United States in Commonwealth of Pennsylvania *56 et al. v. Board of Directors of City Trusts [of Philadelphia], 353 U.S. 230, 77 S.Ct. 806 [1 L.Ed.2d 792]
That case had its inception in the application of two colored boys for admission to Girard College. The Board of Directors of City Trusts rejected them on the score of ineligibility as Stephen Girard had bequeathed and devised his residuary estate to The City of Philadelphia to erect, operate and maintain, as the primary object of his bounty, an institution for the shelter, maintenance and education of poor, white, male orphans. The Orphans' Court of Philadelphia County sustained the Board. Girard Estate, 4 [Pa.] [Dist.] & C[o. R.] 2d 671, 5 Fid. Rep. 449, 6 Fid. Rep. 57. The Supreme Court of Pennsylvania affirmed Girard Will Case, 386 Pa. 548, 127 A.2d 287. The applicants thereupon filed an appeal in the United States Supreme Court. The Board of Directors of City Trusts moved to dismiss for want of jurisdiction. The Court sustained the motion, treated the appeal as a petition for certiorari, which it granted and entered the following order. Commonwealth of Pennsylvania et al. v. Board of Directors of City Trusts [of Philadelphia], 353 U.S. 230 [77 S.Ct. 806, 1 L.Ed.2d 792].
`The Board which operates Girard College is an agency of the State of Pennsylvania. Therefore, even though the Board was acting as a trustee, its refusal to admit Foust and Felder to the college because they were Negroes was discrimination by the State. Such discrimination is forbidden by the Fourteenth Amendment. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. Accordingly, the judgment of the Supreme Court of Pennsylvania is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.'
On June 28, 1957, after remand from the United States Supreme Court, the Supreme Court of Pennsylvania entered the following order.
`Now, Therefore, in obedience to the mandate of the Supreme Court of the United States, a true and correct copy whereof is appended hereto, 
The decrees of the Orphans' Court of Philadelphia County are vacated at the appellee's costs and the cause remanded for further proceedings not inconsistent with the opinion of the Supreme Court of the United States as set forth in its mandate.'
On September 11, 1957, the Orphans' Court of Philadelphia County entered this decree (Girard Estate, 7 Fid. Rep. 553, 558)
`And Now, this 11th day of September, 1957, in obedience to the mandate of the United States Supreme Court dated June 11, 1957, and the order of the Supreme Court of Pennsylvania filed June 28, 1957, and in conformity with the opinion of the Supreme Court of Pennsylvania, dated November 12, 1956, it is hereby ordered and decreed that:
1. The petitions of William Ashe Foust and Robert Felder for admission to Girard College are dismissed.
2. The Board of Directors of City Trusts of the City of Philadelphia is removed as trustee of the estate of Stephen Girard, deceased, *57 effective upon the appointment of a substituted trustee by this court.
3. The Board of Directors of City Trusts of the City of Philadelphia is directed to transfer and deliver the records and assets of the estate of Stephen Girard, deceased, to the substituted trustee, promptly, after such substituted trustee has been appointed and duly qualified.
4. The Board of Directors of City Trusts of the City of Philadelphia is directed to file an account of its administration of the estate of Stephen Girard, deceased, within six months after the date of this decree.'
In three separate per curium opinions, petitions by the Commonwealth of Pennsylvania, The City of Philadelphia and the two colored applicants for vacation or modification were dismissed. 7 Fid. Rep. 608. By decree dated October 4, 1957, the Orphans' Court of Philadelphia County appointed substitute trustees for the estate of Stephen Girard, deceased.
Appeals from the several decrees of the Orphans' Court were taken promptly by the Commonwealth of Pennsylvania, The City of Philadelphia and the two applicants for admission. The Supreme Court of Pennsylvania, in an opinion by its Chief Justice, affirmed the decrees. [In re] Girard College Trusteeship, 391 Pa. 434, 138 A.2d 844.
An appeal was then taken to the United States Supreme Court, whereupon the appellees filed a motion to dismiss. On June 30, 1958 the Supreme Court of the United States entered the following Order:
`The Motion to dismiss is granted and the appeal is dismissed. Treating the papers whereon the appeal was taken as a petition for writ of certiorari, certiorari is denied.'"
The prime question raised by the parties hereto is, of course, the application of the ruling in the Girard case by the United States Supreme Court to the present matter. The main difference in the present contention seems to be that the United States Supreme Court, in its decision, limited its findings to the field of education; and that its ruling is not to be construed as limiting the Board of Directors of City Trusts in administering trusts with similar limitations as to color outside the field of education. This I do not find to be so.
It appears to me that the basis of the decision of the United States Supreme Court is the fact that the Board of Directors of City Trusts is an agency of the State of Pennsylvania *58 and that an agency of the state is prohibited, under the 14th amendment, from participating in any act of discrimination, as would be the state itself. I can find no expression which would indicate that the opinion and the findings therein, in this regard, were limited solely to the field of education. It is to be noted that at no time did the United States Supreme Court indicate that the trust established under the will of Girard was in itself violative of the 14th amendment, but only that the trustee board as a state agency could not deny admission to Girard College on a discriminatory basis. The court in no way indicates any restriction on the right of an individual to limit the individual's right to create trusts for the benefit of any person, class or legal objective whatsoever, whether the trust so created is limited or discriminatory in any way or not. To have held otherwise would have established a precedent prohibiting anyone from bequeathing or devising his property other than to or for the benefit of all persons, or all objects of a testator's bounty. Carrying such a prohibition to its natural conclusion, no one would be permitted to create trusts or give to a class favoring his church, his fraternal organizations, his charitable interests, or, his national origins. This, in no way, appears to be the intention of the United States Supreme Court in its opinion. It does, however, specifically hold that a state agency, regardless for what purpose or reason created, is prohibited under the provisions of the 14th amendment from exercising any discrimination prohibited thereunder; even though the trust sought to be administered provides for such discrimination and is completely lawful and within the established rights of an individual to create.
I, therefore, find that the trust created by the decedent Laura E.W. Tyler, in her last will and testament to be lawful and limited to the classes for which she made provision. I further find that the Board of Directors of City Trusts of the City of Philadelphia is prohibited under the findings of Commonwealth of Pennsylvania v. Board of Directors of City of Philadelphia, supra, from exercising the *59 discriminatory provisions of the trust so established. For that reason the Board of Directors of City Trusts of the City of Philadelphia is removed as trustee of the Estate of Laura E.W. Tyler, deceased, effective upon the appointment and qualification of a substituted trustee by this court.
A more difficult question has been raised by counsel for the City of Philadelphia acting by the Board of Directors of the City Trusts, that is, whether this court should relinquish its jurisdiction over the trust and trustees and direct that the trust be administered in the courts of Pennsylvania rather than the courts of New Jersey, relying primarily upon the case of Martin v. Haycock, 22 N.J. 1 (1956), wherein Justice Brennan speaking for the court states at pages 5 and 6.
"The general rule is that, unless an intention that administration is to be supervised by the courts of his domicil is expressed by the testator in his will or is clearly to be collected therefrom, the courts of the testator's domicil will not ordinarily administer a foreign charity created by his will but will direct that the money be paid over to proper persons at the locus of the charity, leaving its administration to the courts of that place. This is so at least when the charity is not repugnant to our laws and is in accordance with the laws of the foreign place, attributes conceded to be true of Dr. Sweeney's charity."
Great stress is laid upon the fact that the testatrix chose a Pennsylvania municipality acting through its Board of Directors of City Trusts as the trustee; that two Philadelphia institutions, one a state penitentiary, were used in limiting the classes to benefit. I can find nothing in the trust established which indicates, in any way, that the place of residence of the objects of the testatrix bounty is to be in any way controlling. Neither class is limited to residents of Pennsylvania. The mere fact that a felon has been required to serve a term at the Eastern State Penitentiary or that a patient receives treatment at Hahnemann Hospital does not in any way raise a presumption that such persons and their families are Pennsylvania residents. They might very well be residents of any of the 48 states or foreign *60 countries. There is no doubt, of course, that the testatrix placed great confidence in the trustee she selected, and having been active in the field of education and the holder of a degree of law from a Philadelphia University there can be no doubt that she was well aware of the successful administration of Girard College by the named trustee. As heretofore held, however, the named trustee is legally incapable of carrying out the expressed wishes of the testatrix, and it becomes necessary for the court to appoint a substituted trustee. If it appears from the will of the testatrix that it was her intention to have the trusts administered in the courts of Pennsylvania, then there is no doubt but that a Pennsylvania trustee should be substituted and the court of that state acquire jurisdiction. Such does not clearly seem to be the intention of the testatrix. Looking to her appointment of executors to administer her estate prior to the trust, the complaint demonstrates that two individuals, one a resident of New Jersey and the other a resident of Philadelphia, were so nominated. Both have qualified. Nor is it clear that other than confidence in the City of Philadelphia acting through the Board of Directors of City Trusts, the testatrix gave consideration to the administration of her trust by the State of Pennsylvania, except as the classes to benefit under the trusts are limited by the naming of the two Philadelphia institutions.
I am of the opinion, that at this time, there is some uncertainty as to whether the trusts can more effectually be performed with out-of-the-state trustees or whether the interest of all the beneficiaries will best be served by such out-of-the-state trustees.
Should it appear, at some later date, that the administration of the trusts from New Jersey would be inefficient and unduly expensive, then this court, upon proper application should give consideration to the possible removal of the administration of the trust to the jurisdiction of Pennsylvania.
In the case of Martin v. Haycock, supra, Justice Brennan at pages 12 and 13 states:
*61 "The conclusion seems unavoidable that the continued administration of this charity from New Jersey can only be inefficient and unduly expensive, not alone from a consideration of the high expenses for travel which must be incurred if the New Jersey trustees continue their supervision, but from the nature and extent of the services which must be secured locally if the library is to be well and efficiently run in the absence of the trustees. It is difficult to envisage a case more appropriate for administration at the locus, and where remote administration from New Jersey is more unseemly. Our courts would be remiss in our obligation to this New Jersey testator if they continued longer to risk the possible impairment of the testator's purpose necessarily implicit in the factors of distance and want of knowledge of the local customs and conditions which disable our courts and its trustees from the fully efficient performance of the duties of administering the charity at minimum expense.
It should be emphasized that our trustees are co-trustees substituted for the trustee of the testator's own selection. The choice of a substituted trustee brings into play the three objectives sought to be served by his selection, namely, the wishes of the creator of the trust, the interests of all the beneficiaries, and the effectual performance of the trust. In re Tempest, 1 L.R. 485 (Ch. App. 1866); 4 Pomeroy's Equity Jurisprudence (5th ed.), sec. 1087, p. 261; 1 Restatement, Trusts, sec. 108(d). However proper the original appointment of the substituted co-trustees before the library was built when the court might reasonably have felt an uncertainty as to whether the gift should be committed to other hands pending the formulation of definite plans, now that the library is in being and the problems of its management have become uppermost, the transfer of the trust for administration in Ireland best serves all three objectives, and the substituted co-trustees should be relieved of further responsibility in that regard."
It is to be noted that in the later part of the quotation Justice Brennan indicates that in the first instance the appointment of the substituted co-trustee therein was proper, because the court might reasonably have felt an uncertainty as to whether the gift should be committed to other hands or another jurisdiction pending the formulation of definite plans. This clearly expresses the position of the court in the present matter.
I therefore find that until such time as it is demonstrated that the administration of the trusts from New Jersey is inefficient and unduly expensive, and that the natural extent of the service to be rendered cannot be well *62 and efficiently administered, that this court should not relinquish administration of the trusts to the courts of the State of Pennsylvania. While I note that the decedent died a resident of Atlantic County, and as a consequence I would ordinarily select a trustee from the county of the decedent's residence, I recognize the fact that there might be some delay in the administration of the trusts in this case at such a distance from Philadelphia. However, it appears to me that no great difficulties or delays will be experienced in the administration of the trusts by the selection of trustee from the City and County of Camden immediately adjacent to Philadelphia and just as accessible as center city Philadelphia to either of the institutions named in the trusts.
For the reasons just expressed, I hereby designate and appoint Camden Trust Company as substituted trustee in the place and stead of City of Philadelphia acting by the Board of Directors of City Trusts. Upon the presentation of a judgment embodying the findings herein, the same will be signed.