## SAMUEL H. POLLOCK ET AL.

### vs.

## EDGAR O. WATTS.

*Automobile Accident—Car Owned by Wife—Agency of Husband.*

Where one driving his wife's automobile, after starting for a cemetery to visit his mother's grave, digressed from his course in order to get his brother, his wife having in the meanwhile left the car to go elsewhere, *held* that, during such digression, the husband was not the wife's agent, so as to render the wife liable for his negligence.                                                p. 406

The permissive use by one of his wife's automobile does not make him her agent.                                                p. 406

*Decided January 12th, 1923.*

Appeal from the Superior Court of Baltimore City (STANTON, J.).

Action by Edgar O. Watts against Samuel H. Pollock and Fannie L. Pollock, his wife. From a judgment for plaintiff, defendants appeal. Affirmed in part and reversed in part.

The defendants' second prayer was as follows: "The defendant, Fannie L. Pollock, prays the court to instruct the jury that there has been no evidence offered in this cause legally sufficient to show that Samuel H. Pollock was using the automobile of said defendant, at the time of the accident, as the agent of said defendant, Fannie L. Pollock, and that therefore the verdict of the jury must be for said Fannie L. Pollock."

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, ADKINS, and OFFUTT, JJ.

*William L. Marbury* and *L. Wethered Barroll,* for the appellants.

*Arthur L. Jackson,* with whom was *Herbert L. Grymes* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This is an appeal by Mr. and Mrs. Pollock, from a judgment against them in favor of appellee for an injury to appellee in a collision between the automobile of Mrs. Pollock, which was being driven by her husband, and the motorcycle of appellee.

The undisputed facts are as follows: Mr. Pollock left their home on the morning of the accident in the wife'e car. His objective was a cemetery where his mother was buried. When they got near the corner of Calhoun and McHenry Streets, Mrs. Pollock got out of the car to go to her sister's nearby. Mr. Pollock had an appointment to meet his brother at his sister's store near the corner above mentioned, for the purpose of going with them to their mother's grave. On inquiring at the house, Mr. Pollock found that his brother was not there, and, after Mrs. Pollock left the car, he proceeded alone in the car towards his brother's home, having told his sister to be ready. Shortly after this the accident happened.

The disputed questions in the case are:

*a.* Was it the purpose of Mrs. Pollock to go with the brother and sister to their mother's grave?

*b.* If so, was this so far a matter of Mrs. Pollock's business or pleasure as to constitute Mr. Pollock her agent in the operation of the car at the time of the accident?

On the first point, the only testimony pointed out by appellee as tending to show that Mrs. Pollock was to be one of the party to visit the cemetery is the following:

Mr. Pollock, being on the stand, was asked: "Q. By what right were you operating that automobile on that day? A. By my own right. I simply took it; we were going to the

cemetery that Sunday morning; I was going down to my sister's; I had an appointment with my brother there; he was not there and in the meantime I asked my wife to go along and if she wanted to go along to the cemetery, and she said no, she was going to her sister's." There was a motion here to strike out the conversation, which was granted. There was an exception to this ruling, but it was not made the subject of a bill of exception.

There is also the testimony of the witness William A. Helber, as to a conversation he had with Mrs. Pollock after the accident. He said: "Mrs. Trapolsky and Mrs. Pollock came down hunting for me and was excited and said, 'I could not see you, I had a little boy looking for you'; they came back and made another trip and located me and after they located me she said, 'Don't go up and swear so hard, don't go to the station house.' I hadn't gone to the station house; all I did I told the officer what I had seen. I didn't go to the station house; she told me he had just let her out at the corner and going to get a friend to go to the cemetery and come back there. Q. Where was he going for the friend? A. Going to East Baltimore, I think, and coming back to go to the cemetery. Q. Who is Mrs. Trapolsky? A. That lady who keeps the store across the street where she was left out. Q. Is she any relation to Mr. Pollock? A. I believe she is Mr. Pollock's sister."

We do not find anything substantial in Helber's testimony above quoted tending to show that it was Mrs. Pollock's purpose to go to the cemetery. Much was said in the argument about the improbability of Pollock's coming back to Calhoun and McHenry streets, not in the direction of the cemetery from his brother's house, for any other purpose than to take in his wife again. But this argument overlooks the fact that Mrs. Trapolsky, Pollock's sister, lived there, and Pollock had told her to get ready, when he left to go after his brother.

But we have dwelt too much at length on this feature of the case. For if it be admitted, for the sake of the argument, that Mrs. Pollock was to be one of the party, it by no means

follows that any purpose of hers was served when her husband took the car without any direction from her and digressed from their course to go after his brother. That digression by the husband cannot be assumed to have been in her interest or for any purpose of hers. She had then at any rate left the car, and he was proceeding on another errand, temporarily, than that of taking his wife to the cemetery. It certainly cannot be assumed that the going after his brother to visit the grave of their own mother was in any sense the business of the wife, or that it was done for her pleasure. There is an entire absence in the record of any suggestion that the wife requested the husband to go after his brother. On the contrary, both he and she testify positively that he was not then engaged in any business or interest of hers. See *Dearholt Co.* v. *Merritt,* 133 Md. 323, as to the effect of a digression by an agent, temporarily, from the course of his employer's business, upon the agency during the time of departure.

On this state of facts the law is well settled that there can be no recovery against the owner of an automobile.

Indeed it is admitted by appellee, on the authority of *Symington* v. *Sipes,* 121 Md. 313; *Debelius* v. *Benson,* 129 Md. 693; *Dearholt Co.* v. *Merritt,* 133 Md. 323, that the presumption that the driver of an automobile is the agent of the owner, is a rebuttable one, and if rebutted by uncontradicted testimony, then the case ought not to go to the jury; and on the authority of *Myers* v. *Shipley,* 140 Md. 380, that the "family car doctrine" is not in force in Maryland; and on the authority of *Charles* v. *Baltimore,* 138 Md. 523, that "the relationship of husband and wife does not enter into the question of agency, but his agency as against her must be proven to the same extent and in the same way as if the relationship of husband and wife did not exist."

The latter case also settles the proposition that permissive use does not constitute an agency, such decision having been foreshadowed though not definitely made in *Debelius* v. *Benson, supra.* The proposition is also approved in *Meyers* v.

*Shipley, supra.*    See also *Goldsmith* v. *Chesebrough,* 138 Md. 1.

So that the only question remaining is the narrow one as to whether the husband's use of the car was for the business or pleasure of the wife.

Having reached the conclusion from the above analysis of the testimony that the testimony rebutting the presumption of agency, if there is such presumption in a case of this character, which it is not necessary here to decide, was practically uncontradicted, it follows that the case should have been withdrawn from the jury as to Mrs. Pollock, and that there was error in refusing defendant's second prayer, by the granting of which that result would have been accomplished. The reporter is requested to set out this prayer in his report of the case.

Under the authority of chapter 229 of Acts of 1920, the judgment will be reversed as to Fannie L. Pollock and affirmed as to Samuel H. Pollock.

> *Judgment affirmed as to Samuel H. Pollock and reversed as to Fannie L. Pollock, the costs to be paid, one-half each, by Samuel H. Pollock and the appellee.*