## JORDAN STABLER COMPANY *vs.* ELMER TANKERSLY.

*Master and Servant—Scope of Employment—Driver of Truck.*

The question whether the act of a servant was done in furtherance of the master's business, within the scope of the servant's employment, is generally one of fact to be determined by the jury.                                    pp. 460,461

In the case of a collision caused by an automobile-operated by the servant of the owner, there is a reasonable presumption that the servant was acting in the scope of his employment and upon the business of his master.                                    p. 461

That the driver of defendant's delivery truck was not pursuing the most direct route, as determined by the general instructions given him by defendant, would not justify the court in deciding as a matter of law that he was not at the time acting within the scope of his employment.                    pp. 461-463

*Decided August 15th, 1924.*

Appeal from Baltimore City Court (FRANK, J.).

Action by Elmer Tankersly against the Jordan Stabler Company of Baltimore City. From a judgment for plaintiff, defendant appeals. Affirmed.

Among the prayers submitted were the following:

*Plaintiff's Eighth Prayer.*—The jury are instructed that, although they may believe from the evidence that the chauffeur of the defendant had deviated from the route he should have taken, or even from his duty, yet if they find that he had returned to the line of duty and was pursuing it at the time of the accident, they shall return a verdict for the plaintiff, if they find that the accident was caused by the negligence of the chauffeur of the defendant, without contributory negligence on the part of the plaintiff.   (Granted.)

*Defendant's Fourth Prayer.*—The jury are instructed that as it appears from the uncontradicted evidence in the case that Samuel Chapman was using the automobile of the defendant, Jordan Stabler Company, at the time of the accident complained of solely for his own business or pleasure the verdict must be for the defendant.   (Refused.)

*Defendant's Fifth Prayer.*—The jury are instructed that under the pleadings there is no legally sufficient evidence from which the jury may find that the Jordan Stabler Company was responsible in any way for the injury, on account of which recovery is sought in this suit, and the verdict of the jury must be for the defendant, Jordan Stabler Company.   (Refused.)

*Defendant's Sixth Prayer.*—The jury are instructed that as it appears from the uncontradicted evidence in the case that Samuel Chapman the person in possession of the automobile truck of the defendant at the time of the accident, mentioned in the evidence, was not at the time of such accident the servant or agent of the Jordan Stabler Company, there can be no recovery against the said Jordan Stabler Company, and the verdict of the jury must be for the defendant.   (Refused.)

The following were special exceptions to plaintiff's eighth prayer:

The defendant specially excepts to the granting of the plaintiff's eighth prayer, and for reasons thereof says that

there is no evidence in the case legally sufficient under the pleadings:

(1) To support the hypothesis of said prayer.

(2) To prove that the chauffeur of the defendant had returned to the line of his duty, and was pursuing it at the time of the accident.

(3) To prove that the accident was caused by the negligence of the defendant's chauffeur.

(4) To prove that the accident was caused without contributory negligence on the part of the plaintiff.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and BOND, JJ.

*Aubrey Pearre, Jr.,* and *William L. Henderson,* with whom were *Stewart & Pearre* on the brief, for the appellant.

*George Arnold Frick,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The exceptions in this case consist of two, the first to the admissibility of evidence, and the second to the ruling of the court on the prayers. At the conclusion of the evidence the plaintiff offered ten prayers and the defendant thirteen. The court granted the plaintiff's fifth, sixth, seventh and eighth prayers and overruled the defendant's special exceptions to the plaintiff's fifth, seventh and eighth prayers, and rejected the defendant's first, second, third, fourth, fifth, sixth, eleventh and thirteenth prayers and granted the defendant's seventh, eighth, ninth and twelfth prayers. The court's action in this respect forms the second bill of exception. The verdict being for the plaintiff, the defendant has taken this appeal. At the argument in this court the appellant (defendant below) abandoned the first exception and relied solely upon the second bill of exception, relating to the court's ruling upon the prayers, and particularly upon the court's action in overruling its special exception to the granting of

the plaintiff's eighth prayer and the refusal of the court to grant the defendant's fourth, fifth and sixth prayers.

The material facts of the case are undisputed and show that the defendant is a corporation engaged in the grocery business in Baltimore City. It has two locations in said city from which its business is conducted, the location of the principal place of business being 701-705 Madison Street, and its branch store being in Roland Park. That the business of the branch store is carried on separately and distinct, in so far as details of management are concerned, the manager of that branch having full authority in the selection of employees; that this branch makes a large number of deliveries to its customers in the vicinity of Roland Park and some deliveries to customers in other parts of the city; that there are used for making such deliveries trucks belonging to the defendant and operated by chauffeurs or drivers employed by the defendant. On February 8, 1921, at about 6.15 P. M., the plaintiff, while driving a Ford coupe accompanied by a friend, was struck by one of the trucks owned and operated by the defendant from its Roland Park branch and driven at that time by Samuel Chapman, an employee of the defendant. As a result of this collision the plaintiff was severely injured and his automobile practically demolished. The accident occurred at the intersection of Whitelock Street and Druid Hill Avenue. At the time the plaintiff was driving south on Druid Hill Avenue on the west or right side thereof, and had proceeded two-thirds of the distance across Whitelock Street when he was struck on his left side by the defendant's truck approaching from the plaintiff's left and proceeding along on the south or left side of Whitelock Street, and without lights. The plaintiff's automobile was running at the rate of 12 or 15 miles an hour, and as he approached Whitelock Street he sounded his horn and looked to his right but saw nothing approaching from that direction. It is unnecessary to detail further the evidence in respect of the accident, because it is practically admitted by the defendant that the accident was occasioned by its truck at the time being driven by Chapman, one of its

employees, and that there was gross negligence on the part of the driver and no contributory negligence on the part of the plaintiff, and further, that the plaintiff suffered such injury and damage as testified to by the witnesses and for which the jury awarded the sum of $1,200.

The sole question to be determined is, was Sam Chapman at the time of the accident acting as the agent of the defendant and within the scope of his employment? If he was, the defendant is liable; if he was not, there is no liability. The evidence on this point shows that some time after 4.30 P. M. on the day of the accident Chapman proceeded to take a truckload of groceries from the defendant's place of business on Madison Street to its Roland Park branch; that on his route he met two young colored acquaintances, Warren Clark and William Wilson, and asked them to accompany him to Roland Park; that they got in the truck and went with him to the Roland Park branch of the defendant, and assisted Chapman in unloading. After this was completed, Chapman was told that there were four orders to be delivered on his way to the garage where the truck was kept at night. These orders were to be delivered at the following places: One on University Parkway, near Roland Park, two at the Greenway Apartments, Charles and 34th Streets, and one at No. 16 West Mount Vernon Place, the garage where the truck was kept at night being located in the 1100 block of Division Street. These orders were placed in the truck and Chapman was told to make the deliveries and then take the truck to the garage for the night. Chapman left the Roland Park branch at about 5.30 P. M., accompanied by Clark and Wilson. He made delivery of the articles to be delivered on University Parkway and the Greenway Apartments, and then proceeded south on St. Paul Street to Lanvale, west on Lanvale to Charles Street, then to North Avenue, to Eutaw Place, thence to Whitelock Street, to the intersection of Druid Hill Avenue, where the accident occurred, which point was about ten or twelve blocks from the garage. The articles to be delivered at No. 16 West Mount Vernon Place had not been delivered and were in the truck at the time of

the collision.  Chapman stopped on Lanvale Street, according to the witnesses Clark and Wilson, and put some empty bottles in the truck, and again stopped on Eutaw Place, got out of the truck and delivered a package to a house on that street, although they did not know what it was or to whom it was delivered.  Chapman ceased to be employed by the defendant from the day after the accident, and was not present and did not testify at the trial.  Chapman's mother lived about one or two blocks from the scene of the accident, her home being located in the 2200 block on Etting Street. Clark lived about two blocks from the garage, and Wilson, the other occupant of the truck, lived on Druid Hill Avenue about midway between the scene of the accident and the garage.    The defendant employed the witness, Harry J. Simon, whose duty it was to see that the orders taken for delivery were checked as they were placed upon the truck, and to make such entries or notations as would enable him to keep in touch with the various trucks while deliveries were being made.    This witness, as also the witness, John Y. Scrivener, the manager of the Roland Park branch, testified that the directions given to the drivers were general in their nature and were to the effect that deliveries be made in the natural order as determined by their locations, unless specifically directed to the contrary.    There were frequently deliveries to the number of 300 to 350 made from the Roland Park branch in one day.    Each day it was the duty of Chapman, the chauffeur, to get his truck at the garage in the morning, and during the morning to haul freight and marketing from the wharves to the Roland Park branch, and then make a delivery trip from the Roland Park branch.    In the afternoon it was his duty to go to the city house of the defendant, receive bulk goods in box form, and carry them to the Roland Park branch, then to make another delivery trip from the Roland Park branch and return the truck to the garage after making the last delivery in the afternoon.    No one at the city store had authority to direct or require that Chapman make any deliveries from that store without first notifying the Roland Park branch, in order that they might know

at all times the location of the trucks attached to that branch. On the day of the accident the officials of the Roland Park branch had received no such information and had no knowledge of deliveries to be made that evening by Chapman from the Madison Street store. The general instructions to Chapman, and all drivers, were to make deliveries in regular rotation, unless otherwise specifically directed, and return trucks to the garage, these deliveries and return to the garage to be made over the most direct route. On the evening of the accident, had Chapman followed these general instructions and made all of the four deliveries, his route would have been the same as followed until he reached the intersection of St. Paul and Lanvale Streets. If he had followed strictly the general directions given by the officials of the Roland Park branch, when reaching that point, the most direct route would have been to continue along St. Paul Street to Mount Vernon Place, where he would make the last delivery, which point would have been a distance of ten or twelve blocks south east of the garage, and after making this delivery, to proceed to the garage. What he actually did was to leave the route, as above stated at St. Paul and Lanvale Streets, proceed west on Lanvale Street to Charles Street, then north on Charles to North Avenue, west on North Avenue to Eutaw Place, north or northwest on Eutaw Place to Whitelock Street, west on Whitelock Street to Druid Hill Avenue, the point of collision with the plaintiff's automobile, this point being about ten or twelve blocks northwest of the garage.

Was the servant, Chapman, engaged in the defendant's business at the time of the accident?

This is the pivotal question in this case, and the answer is usually for the jury to find.

In *R. C. L.*, vol. 18, page 796, it is stated: "Whether the act was or was not such as to be within the employment's scope is ordinarily one of fact for the jury's determination."

In *Consolidated Ry. Co.* v. *Pierce*, 89 Md. 495, this Court held: "The question whether the act of the servant complained of was done in furtherance of the master's business,

within the scope of the servant's employment is generally one of fact to be determined by the jury."

Where the facts are undisputed and clearly show a marked departure from the master's business, or where the positive and uncontradicted evidence shows that at the time of the accident the servant was serving his own purposes, engaged in his own business, or that of some one other than that of his master, the decision of the question may be within the province of the court; but where there is conflict of testimony as to facts which must be established to determine the question the case should be left to the jury.

This Court has held that in a collision caused by an automobile operated by the servant of the owner, there is a reasonable presumption that the servant was acting in the scope of his employment and upon the business of his master, and that the burden of overcoming this presumption is upon the master by showing that the servant was engaged in business other than his employer's. *Geiselman* v. *Schmidt,* 106 Md. 580; *Stewart Taxi Co.* v. *Getz,* 118 Md. 171; *Vonderhorst Brewing Co.* v. *Amrhine,* 98 Md. 411; *Dearholt* v. *Merritt,* 133 Md. 323.

One of the important duties of Chapman, while engaged in the business of the appellant, was to deliver articles purchased by its customers to their respective places of residence. The uncontroverted evidence is that he delivered a package to a house on Eutaw Place a few minutes before the collision in which the plaintiff was injured, and only a short distance from the point of the accident.

The appellant contends that this package was not its property, because it was not put in the truck at the Roland Park store, and that the officials of that branch had received no information from the Madison Street store of their directing Chapman to make a delivery from that store to the house on Eutaw Place. The testimony of the Roland Park store officials is positive to the effect that that branch had no customers on Eutaw Place and none that far in the city, except Mrs. Bartlett at 16 West Mount Vernon Place; yet the witness, Warren Clark, testified that he was employed as

elevator boy at the Severn Apartments on Cathedral Street, that he knew Chapman was the chauffeur of the appellant because for about three months prior to the accident Chapman had been delivering groceries at the Severn Apartments for the Jordan-Stabler Company.

This testimony was not denied by the appellant.

If the testimony of the defendant's witnesses is true that no deliveries were made in the city as far as Eutaw Place from the Roland Park branch, except on Mount Vernon Place, then the deliveries made by Chapman to the Severn Apartments must have been from the Madison Street store.

It is significant that no employee of the Madison Street store was produced to testify that Chapman had no delivery to make from that store on Eutaw Place on the evening of the accident, as could easily have been done if such had been the fact.

Again, the evidence on behalf of the defendant is to the effect that the drivers would bring back empty bottles when they were told to do so, and a record would be made of that fact, and the records failed to disclose any such entry in respect to bottles gathered by Chapman on the evening of the accident, yet the testimony is positive and unchallenged that shortly before the accident he did stop on Lanvale Street between St. Paul and Charles Streets and put empty bottles in the truck.

These uncontradicted acts of Chapman on the evening of the accident are such as would remove this case from being one of law, to be decided by the court, and make the question of whether he was acting within the scope of his employment at the time of the collision a question for the jury.

If Chapman was engaged in the business of the appellant at the time he made delivery of the package on Eutaw Place and collected the bottles on Lanvale Street, it cannot be said as a matter of law that he was not acting in furtherance of his master's business, within the scope of his employment at the time of the accident. The evidence being in conflict as to whether or not the package delivered on Eutaw Place and the

bottles gathered were those of the defendant, there was no error in submitting this question to the jury for determination.

Upon an examination of the decisions of this Court relied upon by the appellant it will be found that the evidence in each of those cases showed conclusively that the servant at the time of the accident was not engaged in the business of his master, and there was no conflict of testimony on that point.

To hold in this case that the servant was not acting within the scope of his employment at the time of the accident, we would be compelled to disregard the legal presumption that he was so acting, as well as the evidence of the delivery of the package on Eutaw Place and the collection of bottles on Lanvale Street, and base such a conclusion upon the single fact, that he was not pursuing the most direct route as determined by the general instructions given him by the appellant.

This we are entirely unwilling to do.

It will be seen from what we have said that we find no error in the rulings of the lower court and the judgment must be affirmed.

*Judgment affirmed, with costs.*