NATIONAL TRUCKING & STORAGE, INC. *v.*
PATRICK DURKIN ET AL.
(Three Cases.)

[No. 23, October Term, 1944.]

*Decided November 2, 1944.*

The causes were argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*James J. Lindsay,* with whom were *Edwin W. Wells* and *L. Wethered Barroll* on the brief, for the appellant.

*Deeley K. Nice,* with whom were *Max Sokol* and *Dickerson, Nice & Sokol* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The record in this case presents three appeals from judgments obtained by Bernard Durkin, Magdalene Durkin, and Patrick Durkin, an infant, by his father and next friend, in the Baltimore City Court. The cases were consolidated for trial. All three arise out of an automobile accident that occurred on July 21, 1943, at about 11 P. M. at the intersection of Lombard and Paca Streets, in Baltimore City. Bernard Durkin was the owner and operator of a Chevrolet automobile in which his wife and infant son were riding. While driving west on Lombard Street, his car was struck on the left side by an automobile tractor unit owned by the appellant

and operated by an employee of the appellant, Paul Greer, north on Paca Street. The appellees sustained personal injuries and losses as a result of the accident.

The sole question raised on appeal is whether the driver of the tractor unit was acting within the scope of his employment at the time of the accident. This question is sought to be raised in several ways; by objection to the refusal of the trial court to grant two demurrer prayers, one of which specifically raised the question of agency; by objection to the court's oral charge to the jury, in which the question of agency was left to the jury for determination; and by objection to the action of the court in overruling a motion for judgment N. O. V.

The appellees contend that the appellant failed to except to the refusal of the court to grant the demurrer prayers, and that the motion for judgment N. O. V. is not appealable, in the absence of a proper exception prior to verdict, or reservation of decision by the trial court on the prayers or motion for directed verdict. There is force in these contentions, but in the case at bar, we think a proper exception was preserved to the court's oral charge.

In discussing the defense that Greer was not acting within the scope of his employment, the Court told the jury that the testimony was "susceptible of different inferences and different interpretations and it is your job to consider all of that testimony, plus the fact that there is a presumption that the driver of the vehicle is the agent of the owner of the vehicle, and from that determine as best you can where the truth lies; and if Greer was or was not acting within the scope of his employer's business, at his employer's commission at the time." At this point the Court invited suggestions from counsel, and counsel for the defendant stated: "When your Honor said the testimony of Greer and Arnold and Hildebrandt was susceptible of different interpretations, I do not think that testimony is so susceptible." The Court replied: "I do. Please note that Mr. Barroll objects to that portion of the Court's charge to the jury and excepts to the Court's oral charge."

There can be no doubt that the Court's attention was specifically directed to the point raised by the demurrer prayers, and that the Court intended to grant an exception to this portion of his charge. It would have been better practice, no doubt, had the Court completed his charge and adjourned to chambers in order to permit counsel on both sides to state their objections and note exceptions out of the presence of the jury. Under the circumstances, we think counsel for the appellant did all that could reasonably be expected of him, in order to take and preserve a valid exception.

The evidence in the case at bar is uncontradicted. Paul Greer, a resident of Washington, D. C., was employed as a truck driver by the appellant on July 21, 1943. He reported for work at the main Washington office at 7 A. M. and was directed to drive a Mack tractor trailer (No. 17) to Baltimore to pick up a load of sugar and return. He drove to the American Sugar & Refinery Company, Key Highway, Baltimore, and finished loading shortly after 5 P. M. Just before he finished loading, Melvin Arnold, a fellow-employee driving another tractor-trailer of the appellant (No. 18), came to the Refinery to obtain a half load of sugar, but the Refinery closed at 5, and Arnold asked Greer to meet him at Pier 3 Light Street, and drove off. When he had finished loading, Greer kept the appointment. Both vehicles were parked, Arnold's tractor was detached from its trailer, and Greer accompanied Arnold who drove ten or eleven blocks to a restaurant on Frederick Street to get something to eat. Both testified that the purpose of detaching the trailer was to avoid pulling the load around, and that they had no specific instructions as to where they should eat on their trips to Baltimore.

The tractor was parked near the restaurant and they ate their meal. They then proceeded on foot to a tatooing parlor in the neighborhood, where each was tatooed upon the arm. Returning to the tractor, Greer took the wheel and they started back to Pier 3, but both testified that they became lost, and drove around for an hour and

a half before the accident occurred. At the time of the accident, the physical facts clearly indicate that they were going north on Paca Street in a direction away from their avowed destination.

Pier 3 Light Street was a branch office of the appellant. Arnold testified that he left Washington in the forenoon with instructions to pick up a load of salt and sugar and return. He went to Pier 3 and picked up a helper to direct him where to get the salt. He loaded the salt, returned to Pier 3, where he left the helper, then drove to the American Sugar Refinery. Since it was too late to load the sugar, he returned to Pier 3, and was told to go back to Washington and return for the sugar next morning. When Greer arrived at the pier the office had closed; there was no one there when they detached the trailer.

The president of the appellant, Mr. Hildebrandt, testified that the drivers were expected to eat while on duty, but that they had no permission to detach the tracor from the trailer. On the contrary, they were expected to eat somewhere on the road in or out of town; that on the truck route there were plenty of eating places where heavy equipment could be parked. The drivers were paid by the week. They were not regularly assigned to any particular piece of equipment.

The law applicable to such a situation is well established. There is a presumption that the driver of an automobile is the agent and servant of the owner, but the presumption is rebuttable, and if the evidence is uncontradicted and conclusive, the Court must declare nonliability of the owner as a matter of law. *Phipps v. Milligan,* 174 Md. 438, 199 A. 498.

The question in the case at bar involves the application of general rules to the facts of the particular case. If the facts show a departure from the master's business, the chain of liability is severed, but if the facts show a mere deviation in the servant's interest, liability still may attach, and the question is one for the jury.

See *Restatement of the Law of Agency,* Section 238 and cases cited in the comment.

The appellee relies strongly upon the case of *Mc-Dowell, Pyle & Co. v. Magazine Service, Inc.*, 164 Md. 170, 164 A. 148. In this case the driver, on his way back from making a delivery, went about thirty blocks out of the direct route to his master's place of business in a truck on which he had some property of his employer which it was the driver's duty to return. His purpose was to eat lunch at home, and after doing so he was on his way to the master's place of business when the accident occurred. This Court held that the excursion to his home was no more than a deviation of route, and it was a question for the jury as to whether at the time he was engaged in his own or his employer's business or both. However, Judge Sloan, speaking for this Court, 164 Md. at page 174, 164 A. at page 149 said:

"If the appellant's driver used the truck to go from the appellant's store for his lunch, as he had frequently done, with or without express permission of his employer, there would have been no liability, as that would have been merely an accommodation, or a favor granted him * * * and would have been wholly independent of, and unmixed with, his employment."

In *Jordan Stabler Co. v. Tankersley,* 146 Md. 454, 126 A. 65, an employee deviated from the route he was supposed to follow, but there was evidence that the employee was making deliveries for his employer on that route, and property of the employer was upon the truck at the time of the accident. This was held to present a question for the jury. See also *Mech v. Storrs,* 169 Md. 150, 179 A. 525.

In the case at bar, we think the evidence clearly shows a departure from the master's business when the loads were left at Light Street and the employees took the tractor for the purpose of procuring a meal and other entertainment in Baltimore, in disregard of their instructions to return to Washington. This is not a case of deviation from route, or a case where the employee was serving the purposes of his master as well as his own. It is immaterial whether the use

of the tractor was authorized or not, and the bare fact of return toward the point of departure, after a personal use by the employee, does not alone constitute resumption of the employer's service; nor is the fact that the employment was by the week, instead of by the hour, material. Compare *Fletcher v. Meredith,* 148 Md. 580, 583, 129 A. 795, 45 A. L. R. 474; *Debelius v. C. H. Benson & Co.,* 129 Md. 693, 100 A. 505; and *Symington v. Sipes,* 121 Md. 313, 88 A. 134.

For these reasons we think the Court erred in submitting this issue to the jury.

*Judgments reversed without a new trial, with costs to the appellant.*