FOWSER FAST FREIGHT *v.* SIMMONT ET AL.
(Three Appeals in One Record)

[No. 54, October Term, 1950.]

██ 

 ██

 

*Decided January 10, 1951.*

586

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Theodore Sherbow,* with whom was *James J. Lindsay* on the brief, for the appellant.

*John B. Garvey, Jr.,* and *Joseph M. Wyatt,* with whom were *Wyatt & Jones* and *William H. Hudgins* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

Here are appeals by Fowser Fast Freight, a body corporate, from judgments obtained by Mabel Simmont, Alfred D. Simmont and Robert Snyder. All three cases arise out of an automobile accident which occurred sometime after 1 P.M. on August 4, 1948, on the Washington Boulevard south of the Calvert Distillery. The cases were consolidated and tried before a jury.

The only question before this Court on these appeals is whether, at the time and place of the accident complained of, the driver of the tractor was acting in employer's business, within the scope of his employment.

The appeals come to this Court on the refusal of the trial judge to grant the demurrer prayers, which specifically raised the questions of agency and scope of employment, and motions for judgments N.O.V. In deciding, of course, whether the demurrer prayers and the judgments N. O. V. should have been granted, this Court should resolve all conflict in the evidence in favor of the appellees and should assume the truth of all evidence and all inferences which may be naturally and legitimately deduced therefrom, which tend to support the appellees' claim. *Armiger v. Baltimore Transit Co.,* 173 Md. 416, 425, 426, 196 A. 111; *Kuhn v. Carlin,* 196 Md. 318, 76 A. 2d 345. We will therefore recite the evidence in a light most favorable to the appellees.

Alfred Mattson, an employee of the appellant and the driver of the tractor involved in this accident, was first employed by the appellant in November of 1947. Verbal instructions were issued to him at that time by the appellant, that when he made a trip and took the tractor from the trailer, it was not to be unhooked or used for any purpose other than the business of the firm and he was not supposed to use it for personal use at any time. He was supposed to use the specific routes mapped out at appellant's terminal to the delivery point. He could eat at any time, with limitations of roughly a half hour, at any place and time on his regular trip between the starting points and the destination points, where he could park his unit and do so. He had made previous trips from appellant's terminal at Salem, New Jersey, to the Calvert Distillery and he knew that he was to go directly back to the terminal by the same route after he had unloaded his load. These instructions were not repeated to him on August 4, 1948. Mattson, driving the tractor and trailer of the appellant with a load of bottles, left Salem on August 4, 1948, about 9:15 A.M. and according to instructions traveled U. S. Route 40 and U. S. Route 1 about 75 miles to his destination, the Calvert Distillery, arriving about 12:30 P.M. This distillery is located on the Washington Boulevard, south of Baltimore. He was paid according to the union scale for each trip. On this particular trip he was allowed three and one half hours from the starting point to Calvert Distillery, three hours to unload and three and one half hours to return. For any time in excess of three hours that it was necessary for him to wait for his truck to be unloaded, he received extra pay. He was supposed to arrive at the Calvert Distillery for a 1 P. M. delivery. He had had no lunch. Mattson said, after he delivered the load, he found there would be a two or three hour delay before he could start his return trip. The traffic manager for Calvert testified that it took from two to six hours to unload this glass, "it might be longer". Mattson decided that as he would be there

for such a long period and had no duties to perform there, he would go and get something to eat. He unhooked the tractor from the trailer, left the Calvert Distillery grounds and traveled south on the Washington Boulevard for lunch bound for Clay's Diner, a distance of 2.7 miles. While bound for Clay's Diner and traveling south from the Distillery, he was involved in the accident for which damages in these cases were obtained. He had eaten at Clay's Diner before. It is patronized mostly by truck drivers. It had been raining all day and the roads were wet. Mr. Nixon, the terminal manager for appellant, testified that there would have been no objection on the part of his company to Mattson walking to get his lunch. Mattson said he knew there were several eating places between the distillery and Clay's Diner, but he wanted to eat there.

The only eating place north of the Calvert Distillery in that vicinity and on the route which Mattson traveled on his trip to the distillery was Hector's Restaurant, which was at a distance of 1.16 miles. There is no evidence that Mattson knew of this eating place. South of the distillery and between it and Clay's Diner were a number of eating places: Jack's Place, .4 of a mile distant; Kay's Place, .8 of a mile distant; Williams, 1 mile distant; Trucker's Inn, 1½ miles distant. For violating the rules of the company, Mattson was not discharged but was suspended for one week. Other employees have been discharged for infraction of rules.

There is, of course, a presumption that the driver of the automobile is the agent and servant of the owner. This presumption is rebuttable. However, the evidence necessary to destroy that presumption as a matter of law must be conclusive. Otherwise it becomes a question for the jury. *Phipps v. Milligan*, 174 Md. 438, 199 A. 498; *National Trucking & Storage, Inc., v. Durkin*, 183 Md. 584, 588, 39 A. 2d 687; *Taylor v. Freeman*, 186 Md. 474, 477, 47 A. 2d 500; *Scott v. James Gibbons Co.*, 192 Md. 319, 324, 64 A. 2d 117, 119. If the facts here show a departure by Mattson from the appellant's busi-

ness, the appellant is not liable. However, if the facts and any legitimate inferences therefrom show a mere deviation in Mattson's interest, liability still may attach and the question as to whether Mattson was acting in the scope of his employment is one for the jury. *National Trucking & Storage, Inc., v. Durkin, supra,* 183 Md. 588, 39 A. 2d 687; Restatement of the Law of Agency, Section 238.

The appellant relies strongly on the case of *National Trucking & Storage, Inc., v. Durkin, supra.* There, Greer, a resident of Washington, and employed as a truck driver by the defendant, was directed by his employer to drive a tractor trailer to Baltimore for a load of sugar at a refinery. He finished loading the sugar shortly after 5 P. M. Just before he finished loading, Arnold, a fellow employee, driving another tractor trailer of the defendant, came to the refinery to obtain a half load of sugar. As the refinery closed at 5 P. M., Arnold asked Greer to meet him at Pier 3, Light Street, and drove off. Greer kept the appointment. Both vehicles were parked. Arnold's tractor was detached from its trailer, and, accompanied by Greer, Arnold drove ten or eleven blocks to a restaurant to eat. Arnold parked the tractor near the restaurant where they ate. They then proceeded on foot to a tatooing parlor, where each was tatooed. Returning to the tractor, Greer took the wheel and started back to Pier 3, but became lost and drove around Baltimore for an hour and a half when the accident occurred. Arnold admitted that at Pier 3, before going with Greer to eat, he was told to go back to Washington. The drivers had no permission to detach the tractor from the trailer. They were expected to eat somewhere on the road in or out of town where there were many eating places and where heavy equipment could be parked. This Court held that, when the employees took the tractor for the purpose of procuring the meal and other entertainment including tatooing, in disregard of their instructions to return to Washington, they departed from the master's business and were not

in the scope of their employment. That case differs from the one at bar. There was no possible advantage to the employer in the departure. The excursion was not only for eating but for other entertainment and consisted of a one and one-half hour drive over the Baltimore streets. There were many places to obtain food on the route back to Washington. The time was 5 P. M. and the trip home would have required little more than one hour.

In the case of *Wagner v. Page,* 179 Md. 465, 20 A. 2d 164, the driver of a bakery truck had permission from the owner to go to his home to rest preparatory to resuming work at 4 A. M. He drove the truck home and slept until 3 A. M. He then awoke and decided to go to his sister's house on West Lexington Street to get his street clothes to wear after he had completed his duties at the bakery. On the trip to his sister's house on West Lexington Street he had with him in the truck two drivers, also employed by the bakery company. With him also were three young women and a man who requested him to take them to their home, near Lafayette Avenue, which was not on the direct route to Lexington Street, when the accident took place. This Court in that case held that the driver was not within the scope of his employment at the time of the accident because he was using the vehicle only for his own purposes.

In *A. S. Abell Co. v. Sopher,* 179 Md. 687, 22 A. 2d 462, the driver of the truck was employed to deliver packages of proofs to various business houses in Baltimore. At the time of the accident, after making deliveries, he drove his truck directly to Gwynn Oak Junction to pick up a package of his own to take it to the home of his mother. While on the way to his mother's home, the accident happened. He had no proofs to deliver in that neighborhood or anywhere near the scene of the accident. He had been given express instructions that he was permitted to use the truck only for the business of his employer. In that case this Court held the employer not

liable because the employee was on a mission entirely his own.

In *McDowell Pyle & Co. v. Magazine Service, Inc.,* 164 Md. 170, 164 A. 148, the driver of the employer's truck was on his way back from making a delivery and deviated about thirty blocks out of the direct route to his master's place of business in a truck on which he had some goods of his employer which it was the driver's duty to return. His purpose in going thirty blocks out of this direct route was to eat lunch at home. After doing so, he was on his way back to his master's place of business when the accident occurred. Judge Sloan said in that case, 164 Md. at page 176, 164 A. at page 150: "Taking all the facts, accomplished and in contemplation, into consideration, there does not appear to have been any time after the driver left appellant's place of business that he was not engaged in his employer's business, even though, on the return trip, he mixed his own with it." This Court held that the excursion to his home was no more than a deviation of route and it was a question for the jury as to whether, at the time of the accident, he was engaged in his own or his employer's business or both. However, this Court said in that case that, if the driver had used the truck to go from the appellant's store for his lunch, as he had frequently done, with or without express permission of his employer, there would have been no liability as it would have been wholly independent of and unmixed with his employment. See also *Jordan Stabler Co. v. Tankersly,* 146 Md. 454, 126 A. 65.

In *Great Atlantic & P. Tea Co. v. Noppenberger,* 171 Md. 378, 189 A. 434, the manager of the meat department in one of the A & P stores had been instructed and warned that he could not use his own automobile on the company's business. In spite of that instruction, he ordered one of his employees in the meat department, who did not have a license to drive an automobile, to place a number of lamb shoulders in the automobile owned by that manager and to take them to another A & P

store. On this trip, the accident occurred. This Court held there was sufficient evidence that at the time of the accident the employee, driving the manager's personal car, was acting in the course of his employment as an employee of the appellant. This Court in that case, among other things, said, 171 Md. at page 391, 189 A: at page 440: "And an act may be within the scope of the employment, even though forbidden or done in a forbidden manner". See authorities there cited. "An act, although forbidden or done in a forbidden manner, may be within the scope of the employment." Restatement, Agency, Volume 1, Section 230, Forbidden Acts. This principle is affirmed and well discussed by the Supreme Court of the United States in the case of *Philadelphia & R. R. Co. v. Derby,* 14 How. 468, 55 U. S. 468, 14 L. Ed. 502. See also *Sleath v. Wilson,* 9 Car. & Payne 607; *Julian Goldman Stores v. Bugg,* 156 Md. 36, 143 A. 589; *Carroll v. State,* 63 Md. 551, 3 A. 29; Article, 31 Yale Law Journal 99, Master and Servant; *Riley v. Standard Oil Co. of N. Y.,* 231 N. Y. 301, 132 N. E. 97, 22 A. L. R. 1382; *Fletcher v. Meredith,* 148 Md. 580, 129 A. 795, 45 A. L. R. 474; *Hickson v. W. W. Walker Co.,* 110 Conn. 604, 149 A. 400, 68 A. L. R. 1044.

In the case of *Scott v. James Gibbons Co.* 192 Md. 319, 64 A. 2d 117, the defendant was engaged in building and repairing roads and owned a large amount of machinery which was stored in a yard near Relay, Baltimore County. At the time of the accident defendant was engaged in repairing a road near Fredericksburg, Virginia. Carlton J. Layne was employed by the defendant to superintend the work in Virginia. He was directed by the vice-president and general manager of the defendant to bring a piece of machinery from Warsaw, Virginia, to the company's yard near Relay, Maryland. He made this trip on a Saturday afternoon and the tractor-trailer used in hauling the machinery was to be immediately returned to Warsaw to be used there the following Monday morning. The tractor was driven by Charles Martin, hired by Layne to work on the Vir-

ginia roads. The distance from Warsaw to Relay was about 125 miles. On the way to Relay the tractor became impaired and did not arrive at the yard until 10 o'clock that night. It could not be used with safety to make the trip to Warsaw without repair. Randolph Walrath was employed by the defendant to see that the equipment was kept in repair. Layne called Walrath and told him that the lights were short-circuited and the generator out of repair and asked him to make these repairs. Walrath said he could not do so until the next day. Layne asked where he was going to stay and Walrath suggested that he go to a boarding house in Elkridge. Layne asked permission to use the tractor to drive to Elkridge. Walrath told him he could not do this as it was against the rules of the company and suggested he ask someone else to take him to Elkridge. Layne took the tractor, with Martin driving, in spite of these instructions and started for Elkridge, a distance of three-quarters of a mile. On the way to Elkridge, the accident happened. One of the questions before the Court in that case was whether the use of the tractor by Layne and Martin in going from defendant's yard to Elkridge for the purpose of finding a place to sleep was within the scope of the business of the defendant. Mr. Jones, the vice-president and general manager of the defendant, expected the trip to Relay and back to be made in one day. Jones testified that if both men were sleepy, he would not have expected them to return that night and that his company would have paid the expenses for lodging of Martin, but not of Layne because he had an expense account. He also testified that under the circumstances these men were authorized to get a place to sleep that night, as he would not have wanted them to drive a tractor when they were sleepy. This Court held that, at the time and place of the happening of the accident, Layne and Martin were engaged on a matter incident to the company's business and within the scope of their employment and that the demurrer prayer should not have been granted.

In the case now before this Court, as in the case of *Scott v. James Gibbons Co., supra,* the return trip to appellant's terminal had to be made. In the *Scott* case to sleep would have required a walk of three quarters of a mile. Here, to eat would have required a walk of .4 of a mile. Mattson had not completed his master's business. He was allowed and expected to take a half hour for lunch at any place and time on his regular route where he could park his unit. Instead of eating before arriving at the Calvert Distillery, he waited until after he had arrived. If he had eaten before his arrival, it is very possible that he would not have made the 1 P. M. delivery which he was supposed to make. The delay in eating his lunch could therefore have been to the advantage of his employer by not delaying the unloading. Instead of walking in the rain on a wet road .4 of a mile to Jack's Place, as appellant claims he was supposed to do, he drove the tractor 2.7 miles off his route for that purpose. There was no objection to his eating lunch. Food to a truck driver is just as necessary as sleep. It was hardly reasonable to expect Mattson to walk .4 of a mile in the rain on a wet road where traffic is known to be heavy, when he had the tractor available.

Here, Mattson was not on a mission entirely his own. *A. S. Abell Co. v. Sopher, supra; Wagner v. Page, supra; National Trucking & Storage, Inc., v. Durkin, supra.* The jury here could have found that Mattson mixed his own business with that of his employer. *McDowell Pyle & Co. v. Magazine Service, Inc., supra; Jordan Stabler Co. v. Tankersly, supra; Scott v. James Gibbons Co., supra.* The jury here could have found that this was a mere violation of instructions which did not take it out of the scope of his employment. *Great Atlantic & P. Tea Co. v. Noppenberger, supra,* and authorities herein cited. Here, there were sufficient facts for the jury to find a mere deviation in Mattson's interest and in the interest of the employer. Restatement of the Law of Agency, Section 238, *supra.* We cannot say as a matter of law that the facts here show conclusively that this

driver was acting outside the scope of his employment at the time of the accident. The demurrer prayers and the judgments N. O. V. were properly refused. The judgments will be affirmed.

*Judgments affirmed, with costs.*