ROGERS, ET AL. *v.* FRUSH, infant, etc., ET AL.

[No. 234, September Term, 1969.]

*Decided March 6, 1970.*

234

.The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

■■■■■■■■■■■■

*Joseph F. McBride* and *Edward C. Bell,* with whom were *Bill L. Yoho, Robert A. Diemer, Robert S. Hoyert, Roy W. Hooten, Hoyert, Diemer, Yoho, Hooten & Mc-Bride* and *Hugh L. Reilly* on the brief, for appellants.

*Edward P. Camus* for appellees.

SMITH, J., delivered the opinion of the Court.

In the unfortunate accident which gives rise to this litigation the boulevard rule was applied and we are not asked to interpret it.

Suit was brought in the Circuit Court for Prince George's County by Clarence Franklin Frush individually and as father and next friend of his son, Robert Randolph Frush, a minor, they being the appellees here. Defendants were Mary Fred Rogers and her husband, Winston Bratton Rogers, appellants. The matter was moved to Charles County for trial where a jury returned a verdict of $100,000.00 in favor of the infant plaintiff and $13,270.00 in favor of the father, the verdicts being against both defendants.

The appellants pose four questions, namely (1) "Did the trial court commit reversible error in refusing to permit testimony upon appellants' proffer that such testimony would have shown the minor appellee to have been contributorily negligent in his failure to wear a protective helmet?", (2) "Did the trial court commit reversible error in refusing appellants' proffer of evidence that would have shown that the minor appellee could have avoided the consequences of the accident by reasonable conduct on his part?", (3) "Did the trial court commit reversible error in refusing appellants' proffer of evidence which would have shown that the minor appellee's conduct amounted to assumption of the risk of the consequences of this accident?", and (4) "Did the trial court commit reversible error in presenting the question of Mrs. Rogers' agency for Mr. Rogers to the jury?" Find-

ing no error on the part of the trial judge, we shall affirm the judgments.

Mrs. Rogers left her place of employment at the Hyattsville Branch of the Prince George's County Library at Toledo and Adelphi Roads in Hyattsville at approximately 6:00 P.M. on July 13, 1965. She was accompanied by a co-worker, Delores Covington. The home of Mrs. Covington was at 1513 Longfellow Street in Chillum Heights. It was the intention of Mrs. Rogers to proceed to a bus stop at a point on Eastern Avenue on the Maryland—D.C. line to pick up her husband. Her destination for that purpose, as indicated by a map filed in the proceedings, was at Michigan Avenue and Eastern Avenue, a point approximately one mile "as the crow flies" from the home of Mrs. Covington.

The accident in question occurred at the intersection of Toledo Road and Belcrest Road. The intersection is controlled by a stop sign, with Belcrest Road being the favored highway. Young Frush was operating his Honda motorcycle in a southbound direction on Belcrest Road. Mrs. Rogers was westbound on Toledo Road. Collision ensued after Mrs. Rogers, according to her testimony, had stopped at the stop sign, had successfully crossed the three northbound lanes and saw nothing in the southbound lanes when she reached the median strip, although young Frush obviously was there. Mrs. Rogers at the time was operating the vehicle of her husband.

## I.

This case was tried in November of 1968. Appellants took courage from the passage of what is now Code (1969 Cum. Supp.), Art. 66½, § 195 (g) by Chapter 665 of the Acts of 1968 effective July 1, 1968, which reads as follows:

> "*Protective gear.* — No person shall drive * * * a motorcycle as defined in this article, unless he is wearing a firm and durable protective helmet or headgear * * * approved by the Commissioner of Motor Vehicles."

Seizing upon this and the decision of this Court in *Cierpisz v. Singleton*, 247 Md. 215, 230 A. 2d 629 (1967), the defendants thought they saw a possible way out of the unfortunate situation in which they found themselves. In *Cierpisz* Judge McWilliams said for the Court:

> "We agree * * * with the courts that have held it is not negligence per se to fail to use a seat belt where the statute requires only its installation in the vehicle and we so hold. We hold, also, that the failure to use the seat belt, standing alone, is not evidence sufficient to support a finding of contributory negligence. *Some future case in which the availability of the belt will be known to the plaintiff and in which there will be evidence indicating the failure to use it was a substantial factor in producing or aggravating the plaintiff's injuries may require us to consider holding that the issue, with proper instructions, ought to be submitted to a jury.* This case does not require it and we do not so hold." *Id.* at 227. (emphasis added)

Upon the strength of the above emphasized portion of the opinion in *Cierpisz*, appellants sought to introduce into evidence the testimony of Dr. Ayub Ommaya, a qualified neurosurgeon. They proposed establishing him as an expert in the field of investigating automobile and other vehicular accidents and the relationship of the use of helmets as a protective measure in such matters and as an expert in the statistics derived from histories of accidents in which such protective measures were important. It was then proposed to show that the failure to use a helmet in this instance was a substantial factor in producing or aggravating young Frush's head injury by showing that the probability of a brain injury would have been significantly reduced by the wearing of a helmet. The ultimate proffer was that the expert was prepared to testify that if the young man had worn a helmet, his chances of having the physical condition from which he

suffered after the accident would have been reduced by at least 50% and his chances of receiving a basilar skull fracture (such as he received) would have been reduced 90%. The trial judge declined to permit this testimony, pointing out, among other things, that the expert would probably say that similar reductions would take place in an automobile accident if a helmet were worn, with particular reference to a convertible.

Defendants then called as a witness the sales manager of the establishment from which the motorcycle was bought. A proffer was made that he would testify that it was commonly accepted that motorcycle purchasers would buy helmets and that dealers recommended their purchase. There was no proffer, however, that he attempted to sell a motorcycle helmet to young Frush or his father.

In *Kennedy v. Crouch*, 191 Md. 580, 62 A. 2d 582 (1948), this Court observed:

> "It is an elementary rule that evidence, to be admissible, must be relevant to the issues and must tend either to establish or disprove them, and evidence which does not tend to describe or explain the facts and circumstances of the case is inadmissible." *Id.* at 585.

For the proposed testimony here to be relevant it would be necessary for it to relate to conduct on the part of young Frush which would amount to contributory negligence. In *Potts v. Armour & Co.*, 183 Md. 483, 39 A. 2d 552 (1944), this Court defined contributory negligence, saying:

> "Contributory negligence is the neglect of duty imposed upon all men to observe ordinary care for their own safety. It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Id.* at 490.

It is not every action on the part of a litigant which an opponent by way of "second guessing" or hindsight may successfully label as contributory negligence. For instance, in another day our predecessors in *Baur v. Calic*, 166 Md. 387, 396, 171 A. 713 (1934), said: "The fact that a plaintiff is riding upon a running board of a car is not, in itself, necessarily contributory negligence, depriving the plaintiff of the right to recover." But see *Bratton v. Smith*, 256 Md. 695, 261 A. 2d 777 (1970) for a more modern situation where an individual was riding on the drawbar of a tractor. In *Sanders v. Williams*, 209 Md. 149, 120 A. 2d 397 (1956), Judge (now Chief Judge) Hammond said for the Court:

> "As is true of primary negligence, one measure of contributory negligence is the need, in a given situation, to anticipate danger. Presence or absence of reasonable foresight is an essential part of the concept. One is charged with notice of what a reasonably and ordinarily prudent person would have foreseen and so must foresee what common experience tells may, in all likelihood, occur, and to anticipate and guard against what usually happens. On the other hand, one is not bound to anticipate every possible injury that may occur or every possible eventuality." *Id.* at 152.

The evidence proffered was not indicative of a failure on the part of young Frush to adhere to a standard falling within the context of this rule. There was no testimony that an attempt was made to sell a helmet to young Frush or to his parents for him. The fact that the General Assembly almost three years after the accident saw fit to require the wearing of such a protective helmet would not be sufficient ground for concluding that as of the time of the accident such a standard of conduct was expected by the general public, particularly when it is noted that the General Assembly in its passage of Chapter 437 of the Acts of 1967 struck from Senate Bill 189

a proposal which read, "No person shall ride on a motor-cycle unless he is properly wearing a safety helmet approved by the Department."

The trial judge correctly denied admission of the evidence.

## II.

The appellants urge that the trial judge erred in excluding the evidence we have just discussed because young Frush could have avoided the consequences of the accident by reasonable conduct on his part. They cite *Prosser*, Torts, 433 (3rd Ed. 1964), as stating, that recovery is denied "for any damages which could have been avoided by reasonable conduct on the part of the plaintiff." An example of a correct application of the doctrine of avoidable consequences is set forth in *Hendler Creamery Co. v. Miller*, 153 Md. 264, 138 A. 1 (1927). The plaintiff in that case refused an operation after the accident which it was claimed would have improved his condition. Judge Adkins for our predecessors said:

> "It has been definitely decided in this state that there can be no recovery for suffering and disability which could have been prevented by a simple operation, which an ordinarily reasonable man would have submitted to, but which plaintiff refused to submit to. *United Rwys. Co. v. Dean*, 117 Md. 686; *Schiller v. Balto. & O. R. Co.*, 137 Md. 246, and cases there cited." *Id.* at 272.

In *Miller v. Miller*, 273 N. C. 228, 160 S.E.2d 65 (1968), the Supreme Court of North Carolina had before it a case in which the defendant sought to have a plaintiff held guilty of contributory negligence for failure to use a seat belt. This contention was rejected with a citation, among other cases, to *Cierpisz v. Singleton, supra*. The court was also faced with an attempt to invoke the avoidable consequences doctrine. On that subject the court said:

> "If a plaintiff's failure to buckle his seat belt

were held to affect an injured plaintiff's right to recover from an active tort-feasor, it could logically be done only by minimizing his damages, that is, excluding those which it could be shown a seat belt would have prevented.

"The rule in North Carolina is that an injured plaintiff, whether his case be tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. If he fails to do so, for any part of the loss incident to such failure, no recovery can be had. *Johnson v. R. R.*, 184 N. C. 101, 113 S. E. 606. This rule is known as the doctrine of avoidable consequences or the duty to minimize damages. Failure to minimize damages does not bar the remedy; it goes only to the amount of damages recoverable. 22 Am.Jur.2d *Damages* §§ 30-32 (1965). It has its source in the same motives of conservation of human and economic resources as the doctrine of contributory negligence, but 'comes into play at a later stage.' McCormick, Damages § 33 (1935); Prosser, Torts § 64 at 433 (1964).

" 'The doctrine of avoidable consequences is to be distinguished from the doctrine of contributory negligence. Generally, they occur—if at all — at different times. Contributory negligence occurs either before or at the time of the wrongful act or omission of the defendant. On the other hand, the avoidable consequences generally arise after the wrongful act of the defendant. That is, damages may flow from the wrongful act or omission of the defendant, and if some of these damages could reasonably have been avoided by the plaintiff, then the doctrine of avoidable consequences prevents the avoidable damages from being added to the amount of damages recoverable.' 22 Am.Jur.2d *Damages* § 31 (1965).

"The seat-belt situation does not fit the doctrine of avoidable consequences because the failure to fasten the seat belt occurred before the defendant's negligent act and before the plaintiff's injury. *Lipscomb v. Diamiani* [226 A. 2d 914 (Del. Super. Ct. 1967)]. See Kleist [*The Seat Belt Defense—An Exercise in Sophistry,* 18 Hastings L. J. 613 (1967)] at 620. *Cf.* Note, 38 S. Cal. L. Rev. 733 (1966). Nevertheless, it is closely analogous. The same considerations, however, which reject the proposition that a motorist's failure to fasten a seat belt whenever he travels is negligence impel the rejection of the theorem that such a failure should reduce his damages. If there is no duty to fasten a seat belt, such a failure cannot be held to be a breach of the duty to minimize damages. Even were there a statutory requirement that a motorist fasten his seat belt every time he ventured upon the highway—a requirement which would create the duty and provide the standard now lacking—, the complicated task of damage apportionment would 'invite verdicts on prejudice and sympathy contrary to the law,' create 'unnecessary conflicts in result,' and 'degrade the law by reducing it to a game of chance.' *Lipscomb v. Diamiani, supra* at 917.

"The problem of conjectural damages cannot be dismissed lightly when the question is what would have been the extent of the injury had the seat belt been used and what happened because the seat belt was not used. It would involve 'an extreme extension of judgment.' *Id.* at 918. In discussing the difficult problem presented when the plaintiff's prior conduct is found to have played no part in bringing about an impact or accident, but to have aggravated the ensuing damages, Prosser makes this observation: 'Cases will be infrequent, however, in which the ex-

tent of aggravation can be determined with any reasonable degree of certainty, and the court may properly refuse to divide the damages upon the basis of mere speculation.' Prosser, Torts § 64 at 434 (1964).

"We hold that defendant has alleged no facts which would constitute contributory negligence on the part of plaintiff or which invoke the doctrine of avoidable consequences." *Id.* at 239-40.

We do not regard the doctrine as being applicable to these facts.

## III.

The appellants next urge that the trial court's refusal of the proffered evidence was reversible error because the conduct of young Frush amounted to assumption of the risk of the consequences of the accident. We do not agree. The doctrine of assumption of risk rests upon an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a particular risk. See *McClearn v. Southeast Concrete Co.,* 253 Md. 135, 251 A. 2d 896 (1969) ; *Gibson v. Beaver,* 245 Md. 418, 226 A. 2d 273 (1967) ; and *Burke v. Williams,* 244 Md. 154, 223 A. 2d 187 (1966), and cases there cited.

Vastly increased traffic, if nothing more, means that an Eastern Shore of Maryland resident who elects to shop in Baltimore City rather than in one of the towns of the central portion of the Delmarva Peninsula is exposed to greater risk of injury. A defendant in an action brought by such resident could not raise assumption of risk, however, on the ground that once one ventured across the Bay Bridge one assumed the consequences of that traffic, because there would be no consent on the part of the plaintiff to relieve the defendant of the consequences as, for instance, in *McClearn, supra,* where at a construction site a worker elected to do a two-man job himself and placed himself in a dangerous position in so

doing. The conduct of young Frush here in riding a motorcycle without a helmet, even if he had knowledge and appreciated the risk, was not an act by which he relieved Mrs. Rogers of her obligation to operate her vehicle in a careful and prudent manner.

### IV.

The appellants object to the fact that the trial court submitted to the jury the question of the agency of Mrs. Rogers for her husband. They stated:

> "In this case, Mrs. Rogers left her place of employment, made a left turn (rather than the usual right turn when she went to pick up her husband) and was on the way, by a different route to Mrs. Covington's where she had not yet arrived, when the accident happened."

These facts, which are correctly stated, they contend justify a determination as a matter of law that Mrs. Rogers was not acting on her husband's behalf.

In *House v. Jerosimich,* 246 Md. 747, 230 A. 2d 282 (1967), this Court said:

> "The husband-owner of an automobile is liable for his wife's negligence in the use of his automobile when she is acting as his servant or agent. *Talbott v. Gegenheimer,* 245 Md. 186, 225 A. 2d 462; *Charles v. Baltimore,* 138 Md. 523, 114 Atl. 565. In determining whether the wife is the agent of her husband, the ordinary rules of agency are applied. *Charles v. Baltimore, supra;* 6 Blashfield, *Automobile Law and Practice,* Section 255.1, page 408. The driver of an automobile is presumed to be the agent of the owner and to be acting within the scope of employment. *State, Use of Shipley v. Walker,* 230 Md. 133, 186 A. 2d 472; *Hoerr v. Hanline,* 219 Md. 413, 149 A. 2d 378. See also *Pollock v. Watts,* 142 Md. 403, 406-07, 121 Atl. 238. This presumption is rebuttable, but evidence required to

destroy it as a matter of law must be both un-contradicted and conclusive; and if the evidence as to agency is contradicted, or if uncontradicted is not conclusive, the question of agency is for the jury. *State, Use of Shipley v. Walker, Hoerr v. Hanline,* both *supra." Id.* at 749-50.

The appellants presented the testimony of a private investigator who drove the route Mrs. Rogers would have driven to pick up her husband had she not taken her fellow employee home. He also drove the route she proposed following in taking her fellow employee home and in picking up her husband. He drove these routes beginning at approximately 5:50 P.M., the time at which he said Mrs. Rogers started. He determined that the route by way of the home of the fellow employee was approximately four and a half miles long as compared with the normal route of three and a half miles. He found, also, that the time consumed in the route via the home of the fellow employee was, on the average, approximately seven minutes longer than the direct route.

In *Fowser Fast Freight v. Simmont,* 196 Md. 584, 78 A. 2d 178 (1951), Judge Collins said for this Court:

"There is, of course, a presumption that the driver of the automobile is the agent and servant of the owner. This presumption is rebuttable. However, the evidence necessary to destroy that presumption as a matter of law must be conclusive. Otherwise, it becomes a question for the jury. *Phipps v. Milligan,* 174 Md. 438, 199 A. 498; *National Trucking & Storage, Inc., v. Durkin,* 183 Md. 584, 588, 39 A. 2d 687; *Taylor v. Freeman,* 186 Md. 474, 477, 47 A. 2d 500; *Scott v. James Gibbons Co.,* 192 Md. 319, 324, 64 A. 2d 117, 119. If the facts here show a departure by Mattson from the appellant's business, the appellant is not liable. However, if the facts and any legitimate inferences therefrom show a mere deviation in Mattson's interest, li-

246

ability still may attach and the question as to whether Mattson was acting in the scope of his employment is one for the jury. *National Trucking & Storage, Inc., v. Durkin, supra,* 183 Md. 588, 39 A. 2d 687; Restatement of the Law of Agency, Section 238." *Id.* at 588-89.

In that case the Court reviewed a number of the prior holdings of this Court relative to departure and deviation.

The route to the home of Mrs. Rogers' co-employee was in the same general direction as the point at which Mrs. Rogers was to pick up her husband. In fact, although not the most direct route, it was one of numerous routes she could have chosen to follow. The testimony of the private investigator as to the difference in time consumed over the two routes and the difference in distance is not so conclusive as to have justified the trial judge in deciding that the presumption of agency had been rebutted. Accordingly, under the prior holdings of this Court, he was entirely justified in submitting the question to the jury.

*Judgment affirmed; appellants to pay the costs.*